PUBLIC SERVICE COMMISSION OF WEST VIRGINIA, *a corporation, v.* HARPERS FERRY AND POTOMAC BRIDGE COMPANY, *a corporation*

(No. 7691)

Submitted November 2, 1933.   Decided November 14, 1933.

*Homer A. Holt,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for relator.

*Brown & Brown, Price, Smith & Spilman, J. M. Woods* and *Niles, Barton, Morrow & Yost,* for respondent.

HATCHER, JUDGE:

The Harpers Ferry and Potomac Bridge Company, a corporation, operates a highway toll bridge extending across the

Potomac River from West Virginia to Maryland. This is a proceeding in mandamus brought by the Public Service Commission of West Virginia against the bridge company to compel it to file with the commission the schedule of the tolls charged traffic crossing the bridge from West Virginia.

The proceeding was submitted on the pleadings and a stipulation from which it appears that in 1822 the General Assembly of Maryland passed an Act providing that in case the commonwealth of Virginia authorized Catharine Wager and James Bate Wager to erect a bridge across the Potomac river at Harpers Ferry, then it should be lawful for the bridge to be abutted on the Maryland shore and for the owners of the bridge to charge such tolls for passage thereof as the Legislature of Virginia should authorize; that later in 1822 an Act was passed by the Assembly of Virginia authorizing the Wagers to erect a toll bridge across the Potomac at Harpers Ferry and to charge the following tolls, "for every foot passenger, six and one-fourth cents; for every horse, mule, or work-ox, six and one-fourth cents; for all riding carriages, wagons, carts, and drays, six and one-fourth cents per wheel; for every head of neat cattle, three cents; for every score of sheep, hogs, goats or lambs, twenty cents; and so in proportion for a less number"; that a bridge was built forthwith pursuant to the foregoing Acts, and with various repairs and reconstructions has been operated continuously as a toll bridge ever since by the Wagers and their successors in title; that by mesne conveyances the bridge company is the grantee of all the title to the bridge and of all the rights and privileges appurtaining thereto which were held by the Wagers; that the present traffic over the bridge consists mainly of motor driven vehicles, a large proportion of which come from and go to other states than Maryland and West Virginia; that the bridge company has but one toll house, located in West Virginia, and the tolls are collected at that house from traffic bound in both directions; that the tolls are charged by virtue of the authority granted the Wagers (predecessors in title of the bridge company) by the joint action of the states of Maryland and Virginia; and that the bridge company has refused to submit to the jurisdiction of the commission. The stipulation did not mention whether or not the

Potomac River was navigable at Harpers Ferry, or whether Congress or the Interstate Commerce Commission had exercised any authority over this bridge. But counsel in argument agreed that there had been no Federal regulation of the bridge.

The bridge company would defend its position by four propositions, viz: (1) the bridge is an instrumentality of interstate commerce and not subject to state supervision; (2) under the Constitution of West Virginia, Art. VIII, sec. 24, the county (instead of the commission) has superintendence over the establishment and regulation of bridges; (3) the original acts of the respective assemblies of Virginia and Maryland constituted a contract between the two states and the Wagers, the obligation of which neither state can impair because of the Federal Constitution, Art. I, sec. 10; and (4) the right of the Wagers and their assigns to charge tolls is a property right of which they cannot be deprived in whole or part without due process of law, under the provision of the Federal Constitution, Article XIV, section 1, etc.

1.   The first proposition of the bridge company is supported by *Covington etc. v. Ky.*, 154 U. S. 204, 38 L. Ed. 962. The rule pronounced in that case, however, has been modified in the later cases of *Minn. Rate Cases*, 230 U. S. 352, 57 L. Ed. 1511; *Port Richmond etc.* v. *Board etc.*, 234 U. S. 317; *South etc. Ry. Co.* v. *City of Covington*, 235 U. S. 537; *Wilmington etc. Co.* v. *Commission*, 236 U. S. 151. Those Federal decisions were reviewed by this Court in *Shrader* v. *Traction Co.*, 84 W. Va. 1, 99 S. E. 207, which held that while the state cannot directly regulate or burden interstate commerce, the state could in the exercise of its police power and in the absence of legislation by Congress exercise regulatory authority within reasonable limits over a subject distinctly local in character. We are of opinion that the decision in the *Shrader* case was sound and is applicable hereto. We concur therein.

2.   Our case of *Huntington etc.* v. *Commission*, 84 W. Va. 81, 99 S. E. 285, directly opposes the second propostiion of the bridge company. The *Huntington* case held that the authority conferred on the commission to prescribe rates of tolls for ferries operating in this state is not in violation of section 24, article 8 of the Constitution. We see no difference from a

legal standpoint in the authority to prescribe rates of tolls for ferries and rates of tolls for bridges. The bridge company attacks the logic of the *Huntington* case. We are of opinion that the *Huntington* case is sound, but we deem it unnecessary to enlarge on its defense for the reason that the Roads Amendment of 1920 to the Constitution, confers on the legislature plenary powers for the establishment of a system of state roads and highways. Bridges are necessary parts, of a highway system. Therefore the Roads Amendment gives the legislature authority over such bridges. Through the legislature that authority has passed to the commission.

3.   The third proposition of the bridge company is refuted by our case of *Laurel Fork etc. Rd. Co.* v. *Transportation Co.*, 25 W. Va. 324. It was held there that whenever private property was devoted to public use, the owner in effect granted the public an interest in such use and he must to the extent of that interest submit to legislative control for the common good. That doctrine was pronounced by Lord Chief Justice Hale nearly three centuries ago, and it was traced in the *Laurel Fork* decision from Lord Hale through English and state cases to *Munn* v. *Illinois,* 94 U. S. 113, 24 L. Ed. 77, where it was approved by the Supreme Court of the United States. Since the *Laurel Fork* decision, that doctrine has been recognized in our own cases of *Moore* v. *Railway Co.*, 80 W. Va. 653, 660, 93 S. E. 762, and *State* v. *Water Co.*, 94 W. Va. 724, 731, 120 S. E. 918, and has been followed as "settled law" by the Supreme Court in *Manigault* v. *Springs,* 199 U. S. 473-480; *Tyson & Bro.* v. *Banton,* 273 U. S. 418; and in the host of decisions in Roses' Notes on U. S. Reports, 1932 supplement, Vol. 2, commencing on page 568. "Contracts must be understood as made in reference to the possible exercise of the rightful authority of the government, and no obligation of a contract can extend to defeat the legitimate government authority." *Knox* v. *Lee,* 12 Wall. 457, 550-1.

4.   The fourth proposition advanced by the bridge company is abstractly sound. But the regulation of a public utility is "a valid exercise" of the police power of a state. *Union, etc. Co.* v. *Georgia, etc.,* 248 U. S. 372. It is settled that "neither the 'contract clause' nor the 'due process clause' (of the Federal Constitution) overrides the power of the

state to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort, or general welfare of the community." *Atlantic Coast Line* v. *Goldsboro*, 232 U. S. 548, 558.

In a supplemental brief filed by the bridge company, it is insisted that West Virginia (through its commission) cannot regulate the tolls without the cooperation of Maryland. That proposition would have more weight if presented by Maryland itself, instead of the bridge company. In 1822, Maryland left the fixing of the tolls entirely to Virginia and has acquiesced in the action of the latter ever since. Until Maryland takes the initiative we cannot assume that it will object to West Virginia—the sucessor in interest of Virginia—making a reasonable adaptation of the tolls to present conditions.

As Code 1931, chapter 24, gives the commission full authority to proceed in the manner it proposes, the writ will be awarded.

*Writ awarded.*