BRISTOL-MYERS COMPANY, a New Jersey corporation, v. WEBB'S CUT-RATE DRUG CO., INC.

188 So. 91.
En Banc.
Opinion Filed April 14, 1939.
Rehearing Denied May 2, 1939.

*Robert H. Givens, Jr.,* for Appellant;

*Bussey, Mann & Barton,* for Appellee.

BROWN, J.—This is an appeal from an order granting a motion to dismiss the bill of complaint which was filed in the lower court by the appellant here. The case turns upon the validity of Sec. 6 of Chapter 18,395, Acts of 1937; that is, whether said section comes within the scope of the title under Sec. 16 of Art. 111 of the Constitution.

The appellant exhibited its bill of complaint against the appellee, Webb's Cut Rate Drug Co., Inc., seeking to enjoin appellee from further alleged violations of a certain so-called "fair trade contract" executed by the appellant and certain retailers of drugs in the State of Florida, other than the appellee, the release sought being based upon certain provisions of Chapter 18395 of the Acts of 1937, the title of which reads:

"AN ACT to Protect Trade-Mark Owners, Producers, Distributors and the General Public Against Injurious and Uneconomic Practices in the Distribution of Competitive Commodities Bearing a distinguishing Trade-Mark, Brand or Name Through the Use of Voluntary Contracts Establishing Minimum Resale Prices and Providing for Refusal to Sell Unless Such Minimum Resale Prices are Observed."

It was alleged that the appellant, a manufacturer of drugs, pursuant to the provision of said Act, entered into retail sales contracts with a large majority of the retailers in the State of Florida who handled the products of appellant which bear appellants trade-marks; that in and by said contracts the retailers agreed they would not, directly or indirectly, advertise, offer for sale or sell, within the State of Florida, certain products of the appellant bearing appellant's trade marks, at prices less than those specified in said contracts, all of which were uniform.

It was further alleged that while the appellee, a retailer, had never entered into nor executed any of such contracts, the appellee nevertheless was informed of the existence and of the terms and provisions of such contracts, and particularly the provisions relating to minimum retail prices, but that notwithstanding said contract and the repeated protests of appellant against violation of same, the appellee advertised and offered for sale certain of said commodities at prices less than the minimum prices specified in said contracts, said certain commodities being Ipana Tooth Paste and Sal Hepatica.

The bill further alleged that the continuance of such violations was producing great and irreparable injury to the appellant and the retailers in the State of Florida upon whom the appellant must depend for the distribution and sale of its products in this State, and was damaging to the goodwill of the commodities in question and was causing the appellant the loss of sales. The bill ended with a prayer for an injunction against further violations by the appellee, basing such prayer upon Sec. 6 of said Act, which reads:

"Section 6. Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of this Act, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

In his order dismissing the bill, Circuit Judge Hobson held that the inclusion in the title of the expression, "through the use of voluntary contracts establishing minimum resale prices and providing for refusal to sell unless such minimum resale prices are observed," restricts the subject of the Act and implies that its provisions will be applicable only to retailers who voluntarily enter into such

contracts, and not to retailers who refrain from doing so; that because of this implication the title is misleading and that Sec. 6 is therefore invalid and not within the scope of the title of the Act under Section 16 of Article III of our State Constitution.

We concur in this holding of the Chancellor on this the only constitutional question raised in the case. None other is considered.

That portion of Section 6, Chapter 18395, which reads, "whether the person so advertising, offering for sale or selling is or is not a party to such contract," is invalid, because there is nothing in the title of the Act, nor the subject thereof as expressed in the title, which puts the members of the legislature or the public on notice that such a novel provision, and one contrary to the common law, (19 R. C. L. 136-7) was embraced in the Act; nor can such provision be regarded as "matter properly connected" with the subject of the Act as expressed in the title when we consider the restriction placed on the subject of the Act by embracing in the title the clause reading: "through the use of voluntary contracts, establishing minimum resale prices and providing for refusal to sell unless such minimum resale prices are observed." Furthermore, this quoted portion of the title was clearly misleading in so far as Section 6 is concerned, because it indicated that the limitations with reference to minimum resale prices would be applicable to and enforceable against only those retailers who voluntarily entered into contracts providing for such minimum resale prices.

The first part of the title states that it is for the purpose of protecting trade-mark owners, producers, distributors and the public. The next portion states that these persons are to be protected against injurious and uneconomic practices in the distribution of competitive commodities bearing

a distinguishing trade-mark, brand or name. Then it proceeds to say how this protection is to be enforced, and the method is stated thus: "Through the use of voluntary contracts establishing minimum resale prices and providing for refusal to sell unless such minimum resale prices are observed." Appellant contends that the clause just quoted means that *resale prices* which shall be binding on *all* retailers, those who do not contract as well as those who do, are to be thus *established* by the resale prices set forth in the contracts which may be voluntarily entered into by those retailers who see fit to execute such contracts. But this is not, to our minds, the plain and obvious meaning of the language used; quite the contrary. The meaning contended for by the appellant may have been that which was in the mind of the draftsman of the Act, but the actual language used would convey an entirely different meaning to the ordinary mind. The significance of the word "voluntary" is well understood by the average man, be he legislator or plain citizen. Such a person, reading the title to this Act, would conclude that it applied only to those retailers who entered into voluntary contracts with trade-mark owners.

The conclusion reached by the court below, and by this court, is supported by State v. Palmes, 23 Fla. 620, So. 171; Webster v. Powell, 36 Fla. 703, 18 So. 441; State v. Burnes, 39 Fla. 367, 21 So. 290; Wade v. Atlantic Lumber Co., 51 Fla. 628, 41 So. 72; *Ex parte* Knight, *et al.*, 52 Fla. 144, 41 So. 786; State, *ex rel.* Davis, v. Fowler, 94 Fla. 752, 114 So. 435; Colonial Inv. Co. v. Nolan, 100 Fla. 1349, 131 So. 178; State v. Howell, 112 Fla. 852, 151 So. 299; State, *ex rel.* Grodin, v. Barns, 119 Fla. 405, 161 So. 568; State, *ex. rel.* Landis, v. Ault, 129 Fla. 686, 176 So. 789, and many other cases which might be cited if necessary.

The order appealed from is accordingly affirmed.

Affirmed.

TERRELL, C. J., and WHITFIELD, BUFORD, CHAPMAN, and THOMAS, J. J., concur.