W. A. Sheaffer Pen Co. *v.* Barrett, et al.

In Banc. April 24, 1950.

No. 37459 (45 So.·(2d) 838)

(1)

Henley, Jones & Woodliff, for appellant.

4

6

F. F. Mize, and H. B. McCrory, Jr., for appellees.

**McGehee, C. J.**

This is a suit wherein the complainant, W. A. Sheaffer Pen Company, sought a temporary injunction against the defendants, Ray Barrett and Ray Barrett Jewelers, Inc., which jewelry corporation is largely controlled by the individual defendant as owner of the majority of the capital stock thereof, to restrain them from selling the products of the complainant, such as fountain pens, automatic pencils, pen and pencil sets, and writing fluids at prices below those fixed thereon by the complainant, as the manufacturer of such products, in its trade contracts entered into with certain local retail dealers in conformity with the provisions of Section 1108, Code of 1942, known as the "Fair Trade Act", permitting and upholding as lawful such trade contracts under the conditions prescribed by such Act.

On March 12, 1949 the trial court entered a decree denying the complainant's prayer and application for a temporary injunction on the grounds (1) that the said Fair Trade Act is unconstitutional, inimical to the public welfare, and violative of the public policy and fundamental rights of the people in that it is repugnant and hostile to the public interest in the right of free trade and legitimate competition in business; (2) that the Act is in direct conflict and repugnant to the Anti-Trust laws previously existing, and still existing in this state, and in such conflict therewith that both cannot consistently be enforced; (3) that the said Act, by its own terms, precribes the procedure for its violation, and limits the complainant to an action at law for damages, thereby precluding the remedy by injunction.

The bill of complaint also asked for a permanent injunction upon final hearing. On April 25, 1949, the defendants filed a plea or answer in which there was embodied a demurrer challenging the constitutionality of the Act on the grounds,—(1) that the same is in violation of Article III, Section 14, Mississippi Constitution of 1890, as depriving the defendants of their property without due process of law; (2) that it violates Article III, Section 16 of the State Constitution, in that it impairs the obligation of contract and prevents the freedom thereof; (3) that it violates Article III, Section 5 of the Constitution, as being inimical to the public welfare and in violation of the public policy of the state; (4) that it violates Article IV, Section 33 of the Constitution, in that it provides for an unlawful and illegal delegation of authority for price fixing and price legislation by individuals for the sale of commodities; and (5) that it violates Article VII, Section 198 of the Constitution, which provides that the legislature shall enact laws to prevent all trusts, combines, contracts and agreements inimical to the public welfare.

The demurrer also raises the question as to whether or not the chancery court had jurisdiction of a suit for an injunction where the Fair Trade Act specifically provides for damages in a suit at law on behalf of any person who may be entitled to relief. The trial court thereupon sustained the demurrer, ordered the bill for injunction dismissed, and allowed this appeal by the complainant.

The Fair Trade Act, Section 1108, Code of 1942, provides, in substance, that it is lawful for the producer, manufacturer or owner of a commodity which bears, or the label or content of which bears, the trade-mark, brand, or name of the producer, manufacturer or owner of such commodity, and which is in fair and open competition in this state with commodities of the same general class produced by others, to contract with the retailer that he will not resell such commodity except at the prices stipulated by such vendor; that the vendee to

whom such a product is sold may lawfully agree that he will not, in turn, resell it except at the price stipulated by such vendor. The Act further provides, however, that such commodity may be resold without reference to such agreement in the following cases.

"1. In closing out the owner's stock for the purpose of discontinuing delivering any such commodity.

"2. When the goods are damaged or deteriorated in quality, and notice is given to the public thereof.

"3. By an officer acting under the orders of any court."

Furthermore the Act declares that:

"Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any prior existing contract entered into pursuant to the provisions of Section 1 of this Act, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby.

"This Act shall not apply to any contract or agreement between producers or between wholesalers or between retailers as to sale or resale prices."

The bill of complaint contains all of the essential averments to entitle the complainant to the benefit of the provisions of the said Act, and to the relief sought in the enforcement of its trade contracts, which are alleged to have been entered into between the complainant and certain retailers in the City of Jackson, other than the defendants, although neither of the defendants is a party to such contracts, provided the said Fair Trade Act is constitutional.

The averments of the bill of complaint also disclose that in such event the complainant would be entitled to injunctive relief against the defendants who were purchasing, from sources unknown to the complainant, and selling in violation of the trade contracts the commodities produced by the complainant as aforesaid, on the ground that an action at law for damages would not afford as

plain, adequate or complete a remedy as would be afforded by injunctive relief in equity.

In keeping with the legal and economic philosophy of Mr. Justice Brandeis, as set forth in his book entitled "The Brandeis Guide to the Modern World", containing quotations from his numerous writings and excerpts taken from various sources, including his court opinions, articles for periodicals, and other writings, the legislatures of forty-five of the states have enacted these fair trade acts similar to ours in all material particulars, pursuant to the purpose of the Miller-Tydings Amendment to the Sherman Anti-Trust Act, 15 U. S. C. A. Section 1, enacted in 1937, for the protection of small merchants and other small business men and as an exception to the State and National Anti-Trust laws. A few of these fair trade acts, embodying the principles announced by Mr. Justice Brandeis, were enacted prior to the adoption of the Miller-Tydings Amendment, but most of them were enacted subsequent thereto. Our statute was enacted in 1938. In all of the state courts wherein the constitutionality of said acts has been challenged, the same have been upheld as valid except by the Supreme Court of Florida in the case of Liquor Store, Inc., et al. v. Continental Distilling Corporation, 40 So. (2d) 371, and which decision fully sustains the contention of appellees. The New York statute was also declared unconstitutional in Doubleday, Doran & Co., Inc., v. R. H. Macy & Co., Inc., 269 N. Y. 272, 199 N. E. 409, 103 A. L. R. 1330, but this case was overruled by the Supreme Court of New York in the later case of Bourjois Sales Corp. v. Dorfman, 273 N. Y. 167, 7 N. E. (2d) 30, 110 A. L. R. 1411, following the decision of the Supreme Court of the United States in the case of Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 299 U. S. 183, 57 S. Ct. 139, 145, 81 L. Ed. 109, 115, 106 A. L. R. 1476, which upheld the constitutionality of the Illinois Fair Trade Act, wherein the federal supreme court said, among other things: ". . . We are here dealing not

with a commodity alone, but with a commodity plus the brand or trade-mark which it bears as evidence of its origin and of the quality of the commodity for which the brand or trade-mark stands. Appellants (the retailers) own the commodity; they do not own the mark or the good will that the mark symbolizes. And good will is property in a very real sense, injury to which, like injury to any other species of property, is a proper subject for legislation. . . . There is nothing in the act to preclude the purchaser from removing the mark or brand from the commodity—thus separating the physical property, which he owns, from the good will, which is the property of another—and then selling the commodity at his own price, provided he can do so without utilizing the good will of the latter as an aid to that end.''

It is to be noted that our Fair Trade Act applies only to such commodities which bear, or the label or contents of which bear, the trade-mark, brand or name of the producer, manufacturer or owner of such commodity which is in fair and open competition with commodities of the same general class produced by others. It does not enable producers or manufacturers, such as, for instance, the manufacturers of the Parker pen and the Sheaffer pen, to agree among themselves as to the retail price at which their pens shall be sold, respectively. Nor does it permit the wholesalers or retailers of such commodities to agree among themselves as to the sale or resale prices thereof. In other words, it applies only as to what is known as ''vertical'' contracts, which enable the producer, manufacturer or owner to contract with the retailer as to the resale price of its own product which is in fair and open competition with commodities of the same general class produced by others.

Except for the protection afforded to the small corner drug store or other small business man by the Fair Trade Act as to commodities bearing the trade-mark, brand, or name of the producer, manufacturer or owner of said commodity, they could not retain the business

of their local friends and acquaintances for the purchase of such merchandise in competition with chain stores or others who may be inclined to cut the prices on such commodities as a means of taking away the business of such corner drug store or other small business man in such trade-marked merchandise. A local customer may prefer to buy such commodities from his fellow townsman who may be a small merchant, provided he can get said commodities at the same price at which they are being sold by the larger and more wealthy concerns, but he may not be willing to do so for economical reasons where the chain store or other wealthy business concern is allowed to sell not only the same commodity, but the good will, reputation, and trade-mark of its producer or manufacturer at or below cost as a means of inducing customers into the store upon the theory that it may profit thereby on the sale of other commodities until it can be said competition on the trade-marked articles cause the small business man to discontinue the handling of the cut-priced article.

At any rate, the constitutionality of said Fair Trade Act has been upheld by all of the state courts except that of Florida, where the constitutionality thereof has been brought into question, and also by the Supreme Court of the United States, as aforesaid.

The case of Schwegmann Bros. v. Louisiana Board of Alcoholic Beverage Control, 216 La. 148, 43 So. (2d) 248, which involved the right of such boards to enforce a police regulation of the state as being a reasonable exercise of the police power in fixing a certain price to prevail as to the sale of alcoholic beverages throughout the state, did not involve a vertical contract under the Fair Trade Act whereby the producer or manufacturer undertook to fix the retail price of his own product, and the case, therefore, is not controlling on the question before us in the instant case. Moreover, the Supreme Court of Louisiana upheld the constitutionality of its Fair Trade Act in the case of International Cellucotton

Products Co. v. Krauss Co., Ltd., 200 La. 959, 9 So. (2d) 303.

And it is said in an annotation contained in 125 A. L. R. 1330, that ''It is now the settled doctrine in New York that the Fair Trade Act does not violate the fundamental law; and the act is constitutional, although it is made applicable to a violator of the price fixing agreements who is not a party to such agreement.''

Without prolonging this opinion with a citation and discussion of the decisions of the various courts upholding the constitutionality of such Fair Trade Acts, █ we align ourselves with this great weight of authority as against the Florida case of Liquor Store, Inc., et al. v. Continental Distilling Corporation, supra, and we hold that our statute, Section 1108, Code of 1942, is constitutional; and that █ the complainant has stated a good cause of action for the relief prayed for, which can be defeated only by proof on the part of the defendants that the allegations of the bill of complaint are untrue.

The cause will be reversed and remanded for hearing on bill, answer, and proof.

Reversed and remanded.