# Richmond

BENRUS WATCH COMPANY, INCORPORATED v. JACK KIRSCH, TRADING AS SMITH-WILLIAMS JEWELERS.

April 23, 1956.

Record No. 4507.

Present, All the Justices.

The opinion states the case.

*Israel Steingold* (*Samuel A. Steingold* and *Maurice Steingold*), for the appellant.

*Frederick H. Cole,* for the appellee.

*T. L. Plunkett, Jr.* and *Thomas A. Rothwell,* for the American Fair Trade Council, Inc., amici curiae.

BUCHANAN, J., delivered the opinion of the court.

This appeal concerns the validity of the Virginia Fair Trade Act, Title 59, chapter 1, sections 59-1 to 59-8, 1950 Code of Virginia.[1] Benrus Watch Company, Incorporated, plaintiff below and now

---

[1] The Virginia Fair Trade Act, follows the usual pattern of such acts, which have

appellant, filed its bill for an injunction against defendant, Jack Kirsch, Trading as Smith-Williams Jewelers, in which it alleged that it was a manufacturer and distributor of watches, with its principal office and place of business in New York; that it had established minimum retail prices for watches sold by it to retail merchants for resale, and had entered into contracts with numerous retail merchants in Virginia, under the terms of which its minimum retail prices had been established for Virginia; that in December 1952 it was advised of a violation of the Virginia Fair Trade Act by the defendant and gave notice to him to cease and desist from further violation; that afterwards the defendant published advertisements in Richmond newspapers offering one-third off on his entire stock of nationally advertised watches, and stating:

"This is fair-trade merchandise and we are not permitted to cut prices but in keeping with the spirit of this tremendous sale we will allow you a trade-in value of 1/3 for your old watch regardless of make or condition. In effect, this gives you a reduction of 1/3 when you select one of these famous make watches. Benrus—Bulova—Hamilton—Wittnauer—Elgin—Longines."

The bill alleged that the defendant thereby violated § 59-4 of the Code,[2] and prayed that he be enjoined from selling Benrus watches at prices below the minimum fixed by plaintiff's Fair Trade agreements.

been adopted in 45 of the States. Section 59-3 provides:

"No contract relating to the sale or resale of a commodity which bears, or the label or container of which bears, the trademark, brand, or name of the producer or distributor of such commodity and which commodity is in free and open competition with commodities of the same general class produced or distributed by others shall be deemed in violation of any law of the State by reason of any of the following provisions which may be contained in such contract:

"(a) That the buyer will not resell such commodity at less than the minimum price stipulated by the seller;

"(b) That the buyer will require of any dealer to whom he may resell such commodity an agreement that he will not, in turn, resell at less than the minimum price stipulated by the seller;

"(c) That the seller will not sell such commodity;

"(1) To any wholesaler, unless such wholesaler will agree not to resell the same to any retailer unless the retailer will in turn agree not to resell the same except to consumers for use and at not less than the stipulated minimum price, and such wholesaler will likewise agree not to resell the same to any other wholesaler unless such other wholesaler will make the same agreement with any wholesaler or retailer to whom he may resell; or

"(2) To any retailer, unless the retailer will agree not to resell the same except to consumers for use and at not less than the stipulated minimum price."

[2] Section 59-4 provides that it shall be a violation of such resale price restriction, for which the remedies prescribed by § 59-7 shall be available, to offer or give any article of value in connection with the sale of a Fair Trade commodity; or to offer

The bill does not specifically allege that the defendant was not a signer of such an agreement, but that was regarded as an established fact in the suit.

The defendant demurred to the bill on the ground that the Fair Trade Act violated various sections of the Constitution of Virginia and the Constitution of the United States, and that it was otherwise illegal and void on the ground, among others, that it was in conflict with and repealed by Title 59, chapter 3, of the Code, as amended in 1950, the Virginia Anti-monopoly Act.

By the decree appealed from the trial court sustained the demurrer on the ground last stated and, further, because the nonsigner section of the Fair Trade Act violated the Constitution of Virginia. The only assignment of error is to this ruling on the demurrer.

We examine first the holding that the nonsigner section of the Fair Trade Act is in conflict with, and consequently was repealed by, the 1950 amendment of the Anti-monopoly Act.

Section 165 of the Virginia Constitution provides that "The General Assembly shall enact laws preventing all trusts, combinations and monopolies, inimical to the public welfare." Pursuant to this mandate the General Assembly enacted chapter 54, Acts 1919 Extra Session, page 82, which, as amended in 1926 (Acts 1926, ch. 171, p. 314), became chapter 3 of Title 59, sections 59-20 to 59-40 of the Code of 1950. That law, among other things, defined a trust or monopoly, declared that any such trust or monopoly as so defined was unlawful, against public policy and void, and prescribed penalties for violations.

Section 59-39 is as follows:

"The provisions of this chapter shall be liberally construed in order effectually to secure the enforcement of provisions hereof for the protection of the people of the Commonwealth."

Section 59-40 provided:

"This chapter shall apply only to those trusts, combinations and monopolies which are unreasonable or inimical to the public welfare, as hereinbefore defined, *and are prohibited and penalized under the provisions of any law of the United States, or would be prohibited*

---

or make any concession of any kind, by giving coupons or otherwise, in connection with any such sale.

Section 59-7, the nonsigner clause of the Act, is as follows:

"Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of this chapter, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

*and penalized under the provisions of any law of the United States if their activities extended to interstate as well as intrastate commerce."* (Italics added)

The italicized words were added by the 1926 amendment, with the effect, as held in *Werth* v. *Fire Companies' Adjustment Bureau,* 160 Va. 845, 857, 171 S. E. 255, 259, of limiting the operation of the Act to trusts and monopolies which would be prohibited and penalized under any law of the United States if their activities extended to interstate commerce.

Seventeen years after this Anti-monopoly law was first enacted, the General Assembly of 1936 enacted the Fair Trade Act, *supra;* and two years later, by Acts 1938, page 775, added thereto the nonsigner section (§ 59-7, *supra*), the effect of which was to legalize contracts fixing the minimum price for Fair Trade commodities not only as to all persons described in § 59-3, *supra* Note 1, but also as to all who had notice of such established price although not parties to such a contract or agreement.

This Fair Trade Act was distinctly in conflict with the Anti-monopoly law which had declared specifically, as shown below, that it was unlawful and against public policy to fix prices as was done by the Fair Trade Act.

It necessarily follows that if the Fair Trade Act of 1936, as amended in 1938 (and again in 1940 in a minor particular not here material), was valid at all, as against the claim that it violated the Virginia Constitution, it was so by reason of being enacted later than the Anti-monopoly law and having in the 1936 and 1938 Acts a provision that all Acts or parts of Acts inconsistent therewith were thereby repealed to the extent of such inconsistency. However, both the Fair Trade Act and the Anti-monopoly statute were re-enacted (without the repeal provision of the former) in the revision and recodification that resulted in the 1950 Code, and thereby presumptive attained equal dignity (*Ritholz* v. *Commonwealth,* 184 Va. 339, 367, 35 S. E. 2d 210, 223; *McClain* v. *Commonwealth,* 189 Va. 847, 857, 55 S. E. 2d 49, 54); but if conflicting, the dates of the original enactments would be looked to and effect given to the later. *Winn* v. *Jones,* 6 Leigh (33 Va.) 74; 17 Mich. Jur., Statutes, § 96 at 359.

When the 1926 amendment of the Anti-monopoly law, *supra,* added to that law the italicized words in § 59-40, as referred to above, which limited the application of the law to such trusts and monopolies as were prohibited and penalized by Federal law if their activities extended to interstate commerce, the trusts and monopolies

then prohibited and penalized were those banned by the Sherman Anti-trust Act of 1890, 26 Stat. 209, 15 U.S.C.A. § 1. The Sherman Act was amended in 1937 by the Miller-Tydings Act, 50 Stat. 693, 15 U.S.C.A. § 1, exempting contracts fixing minimum prices for Fair Trade commodities when such contracts were lawful under State law. The Supreme Court decided in 1951, in *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U. S. 384, 71 S. Ct. 745, 95 L. ed. 1035, 19 A.L.R. 2d 1119, that the Miller-Tydings Act was not broad enough to cover nonsigners under the Fair Trade Act. Following that decision the McGuire Act was passed in 1952 (66 Stat. 632, 15 U.S.C.A. § 45), specifically extending the provisions of the Miller-Tydings Act to nonsigners.

In 1950, after the amendment made to the Sherman Act by the Miller-Tydings Act, the General Assembly passed "AN ACT to amend and reenact §§ 59-20 and 59-40 of the Code of 1950, relating to the prevention of trusts, combinations and monopolies inimical to the public welfare; defining same and to repeal § 59-30 of the Code of 1950 so as to remove certain exemptions." Acts 1950, ch. 396, p. 703.

The 1950 amendment to § 59-40 omitted therefrom the italicized words above referred to, which limited the Virginia Anti-monopoly law to such trusts and monopolies as were prohibited and penalized by Federal law if their activities extended to interstate commerce, and made § 59-40 to read thus:

"This chapter shall apply only to those trusts, combinations and monopolies which are unreasonable or inimical to the public welfare, as hereinbefore defined."

By the same Act § 59-20 was re-enacted in the same language as in the original Anti-monopoly Act of 1919, as amended, and in the same language as in the 1950 Code, except in two respects not here material. That is, the 1950 Act again defined a monopoly, so far as we are now concerned, as a combination of acts by two or more persons:

\*      \*      \*      \*      \*      \*      \*

(4) To fix at a standard or figure, whereby its price to the public or consumer is in any manner controlled or established, any commodity of merchandise intended for sale or consumption in this State;

(5) To make or carry out contracts or agreements of any kind or description by which they:

(a) bind themselves not to sell any commodity below a common standard figure or fixed value:

(b) agree in any manner to keep the price of such commodity at a fixed or graduated figure;

(c) in any manner establish or settle the price of a commodity between them or themselves and others, so as directly or indirectly to preclude a free and unrestricted competition among themselves, purchasers or consumers in the sale of such commodity; or

(d) agree to combine or directly or indirectly unite any interests which they have connected with the sale of such commodity that its price might in any manner be affected.

These are the monopolies referred to in § 59-40 by the phrase "as hereinbefore defined," and declared by § 59-21 to be "unlawful, against public policy and void."

The Anti-monopoly law as thus re-enacted in 1950 is in its express provisions completely and irreconcilably in conflict with the Fair Trade Act. The Anti-monopoly law in explicit terms condemns as being inimical to the public welfare, against public policy and void the very things that the Fair Trade Act allows.

By the 1950 amendment to § 59-40 the Anti-monopoly Act was divorced from and made independent of related Federal Acts, and its application was broadened to embrace all trusts and monopolies which are unreasonable or inimical to the public welfare as defined by the Virginia Act itself. Whether the change proceeded from a purpose to make the Fair Trade Act inoperative is uncertain but not controlling because that is its result whatever its purpose. There is no way to reconcile the provisions of the two laws. Both cannot stand. In that posture the earlier enactment must yield and the later be given effect. *Norfolk & W. Ry Co.* v. *Virginian Ry Co.*, 110 Va. 631, 644, 66 S. E. 863, 867; *Gaskill* v. *Commonwealth*, 185 Va. 440, 443, 39 S. E. 2d 296, 297.

"The repeal by implication is not favored, but if inevitable is as effective as is an express statutory mandate." *Commonwealth* v. *Sanderson*, 170 Va. 33, 39, 195 S. E. 516, 519.

In view of this conclusion we do not reach the very serious questions raised as to the constitutionality of the Fair Trade Act when measured by the provisions of the Virginia Constitution and the doctrine of *Young* v. *Commonwealth*, 101 Va. 853, 45 S. E. 327, and subsequent cases.

The decree appealed from is

*Affirmed.*