GENERAL ELECTRIC COMPANY, *a Corporation*

*v.*

A. DANDY APPLIANCE COMPANY, INC., *a Corporation*

(CC 841)

Submitted January 15, 1958. Decided April 11, 1958.

*Jackson, Kelly, Holt & O'Farrell, F. Paul Chambers,* for plaintiff.

*Charles M. Walker,* for defendant.

DUCKER, JUDGE:

This is a case certified by the Circuit Court of Kanawha County on its own motion and in which Court the appellant, plaintiff below, filed its bill of complaint praying for an injunction to restrain the appellee, defendant below, from wilfully and knowingly selling electrical appliances bearing the plaintiff's trademark, at prices less or below the minimum retail sale prices fixed by the plaintiff under agreements with plaintiff's authorized dealers in West Virginia, the defendant not being such an authorized dealer or a signer of any such agreement, and the suit is one based upon alleged violation of the so-called "Fair Trade Act" of West Virginia.

The plaintiff, in its bill of complaint, alleges: that it is a New York corporation authorized to do business in West Virginia; that it is engaged in the business of manufacturing electrical portable appliances and selling the same in West Virginia; that said appliances bear the plaintiff's trademark "General (G.E.) Electric" and are in fair and open competition with appliances of the same general class made by others; that plaintiff has expended large sums of money, in excess of a million dollars, in promoting and advertising said appliances and has established a valuable reputation and good will for said appliances and for the trademark; that pursuant to the "Fair Trade Act" of West Virginia, (Chapter 123, Acts of the Legislature, 1937, Regular Session; Chapter 47, Article 11 of the Code of West Virginia, as amended), plaintiff entered into agreements, all in the same form, under which plaintiff stipulated minimum retail resale prices for said appliances and that said contracts are now in full force and effect; that plaintiff duly notified defendant of the existence of its "Fair Trade" agreements

and of the minimum retail resale prices stipulated by plaintiff for such appliances; that defendant at various times after such notice wilfully and knowingly sold such appliances at prices lower than those stipulated by plaintiff and not under an exception provision of such contract; that by reason of such price-cutting and other violations of the Fair Trade Act on the part of defendant, plaintiff's trademark and good will are being jeopardized and the value thereof debased and plaintiff will suffer great loss and irreparable injury, and other retailers will not be able to sell said appliances at established retail prices and may refuse to handle said appliances; and that plaintiff has no adequate remedy at law. Exhibits to the bill contain the form of contract made with others than defendant, and price lists, as well as affidavits to support the facts alleged.

The defendant demurred to the plaintiff's bill on the following grounds: (1) that plaintiff has made no allegation that defendant entered into any agreement with plaintiff stipulating minimum retail resale prices for appliances manufactured by plaintiff; (2) that to make the "Fair Trade Act" of West Virginia applicable to the defendant, who did not enter into any contract with plaintiff providing for minimum retail resale prices for appliances, is not a proper or legitimate exercise of the police power of the state, and is an invasion of the property rights of this defendant without due process of law; (3) that the West Virginia Fair Trade Act having been enacted in 1937 was void as of the date of its enactment because it was contrary to a Federal Statute known as the Sherman Anti-Trust Act, and is, therefore, still void and of no legal effect; and, (4) that Section 6 of the West Virginia Fair Trade Act is void as violative of Section 30, Article VI of the Constitution of the State of West Virginia, because Section 6 of the West Virginia Fair Trade Act brings an object into the Act which is not expressed in the title of the Act, therefore, said Section 6 of the Act is void as to a non-signer of a minimum retail resale price agreement such as this defendant.

Section 6 of Chapter 123, Acts of the Legislature, 1937, Regular Session, reads as follows:

"Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of this act, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

We consider it unnecessary, in view of the recital of the issues, to quote the other sections of the statute.

The Circuit Court overruled the defendant's demurrer as to its first three grounds and sustained it on the fourth ground, holding that the Fair Trade Act is void because it violates Section 30, Article VI of the Constitution of West Virginia, in that the title to the act is not sufficient to express its purpose of bringing within its scope a non-signer of Fair Trade agreements; and the Court certified to this Court the following questions, which though substantially are the same as those specified in the demurrer, are exactly and expressly these:

(1) Is or is not the provision of the West Virginia "Fair Trade Act" (Acts of the Legislature, 1937, Regular Session, Ch. 123; W. Va. Code, as amended, Ch. 47, Article 11, Sec. 6), which requires the defendant to maintain certain minimum retail resale prices for appliances, even though the defendant did not enter into any contract with the plaintiff, providing for such minimum retail resale prices, a proper exercise of the police power of the State of West Virginia?

(2) Is or is not the provision of the West Virginia "Fair Trade Act", (Acts of 1937, Ch. 123; W. Va. Code, as amended, Ch. 47, Art. 11, Sec. 6), which requires the defendant to maintain certain minimum retail resale prices for appliances, even though the defendant did not enter into any contract with the plaintiff providing for such minimum retail resale prices, an invasion of

the property rights of this defendant without due process of law?

(3) Is or is not the West Virginia "Fair Trade Act", (Acts of 1937, Ch. 123, Code, as amended, Ch. 47, Art. 11, Sec. 6), void and of no legal effect because enacted in 1937, contrary to a Federal Statute known as the Sherman Anti-Trust Act?

(4) Does or does not Section 6 of the West Virginia "Fair Trade Act", (Acts of 1937, Ch. 123; W. Va. Code, as amended, Ch. 47, Art. 11, Sec. 6), in so far as it relates to rights against non-signers, embrace an object not expressed in the title of said Act so as to be rendered void as violative of Section 30, Article VI of the Constitution of the State of West Virginia?

The first and second questions certified may well be considered together because it must first be determined whether the Fair Trade Act is a proper exercise of the police power of the state, for if it is not, then it necessarily follows that it is not due process as to non-signers, but if the Act is within the police power of the state, the question of whether it violates the due process provision of the West Virginia Constitution may still require consideration and determination.

Although great reliance is placed by the plaintiff upon the case of *Old Dearborn Distributing Co.* v. *Seagram Distillers Corp.*, 299 U. S. 183, 57 S. Ct. 139, 81 L.Ed. 109, decided in 1936, and which involved a similar Fair Trade statute enacted in Illinois, and that case remains as authority for the validity of the West Virginia Act in so far as its validity under the due process clause of the Federal Constitution is concerned, such authority is not conclusive upon this Court in determining whether such an Act is within the police power of this State or is violative of the due process of law provision of the West Virginia Constitution, even though the provisions of both Federal and State Constitutions are practically identical in language. However, our conclusion that the Act in question is not a proper exercise of the police power

of this state will eliminate any necessity for holding the Act valid because it may not violate the Federal Constitution. We are of the opinion that the determination of the extent and limitations of the police power of this state remains a prerogative of the sovereignty of this state and any question of constitutionality thereof under the Constitution of West Virginia is determinable by this Court. The converse proposition which was involved in the *Old Dearborn Distributing Company* case is not necessarily applicable to the case here before us for decision.

Since the first enactment of these Fair Trade Laws there have been decisions in many of the states determining their validity or invalidity, and the earlier decisions were mostly favorable to their validity, but as of the present time it appears that the decisions are more or less equally divided. With such respectable authority in favor of the positions of both plaintiff and defendant, it would not be too difficult to substantiate either position, but here it becomes necessary to define the police power of this state so far as the same is or is not applicable here, and decide the issue in this case accordingly.

Two States, namely, New Mexico and Ohio, have by their very recent decisions declared Fair Trade Acts an improper exercise of the police power of the state, and accordingly, violative of the due process law provisions of their constitutions. *Skaggs Drug Center, a Corporation v. General Electric Company, a Corporation,* 315 P. 2nd 967; *Union Carbide & Carbon Corp.* v. *Bargain Fair, Inc., et al.* 167 O. S. 182, 147 N. E. 2d 481.

The case of *Skaggs Drug Center* v. *General Electric et al., supra,* contains a quite complete review of many of the cases on this subject, and in addition thereto, the court has cited the extensive annotations contained in 125 A. L. R. 1335 and 19 A. L. R. 2d 1139, to which cases and annotations we now herein refer, in order to eliminate the necessity of citing and discussing in detail the opinions and decisions on this subject. Such a discussion

will only result in a repetition of the authorities without affording additional reason or information. However, because the following pertinent paragraph quoted in the *Skaggs* case is so expressive of our reasoning, we insert the same with approval here, as follows:

"The Supreme Court of Georgia in Cox v. General Electric Company, supra, in commenting upon the decisions of other states as to the fair trade acts, made the following very pertinent statement [211 Ga. 286, 85 S. E. 2d 519]:

" 'It is earnestly argued that a number of the supreme courts have upheld the validity of their Fair Trade Acts, which were almost, if not entirely, identical with the Georgia statute under consideration, and our attention is called to a number of decisions by the Supreme Court of the United States. We are aware of the fact that a number of the State Supreme Courts have upheld these acts, a number have not passed upon them, and others have held them invalid. We are also familiar with the conflicting decisions on this question by the Supreme Court of the United States, as pointed out in the special concurring opinion of Chief Justice Duckworth in Harris v. Duncan, supra [208 Ga. 561, 67 S. E. 2d 692]. We are here, however, dealing with the statutes of this State and with the question of whether or not they violate the Constitution of the State of Georgia. What the courts of other States have decided is not controlling, and this is one of the few powers left to States to decide for themselves regardless of what the Supreme Court of the United States may or may not have decided. We are also familiar with the modern trend to allow the government to encroach more and more upon the individual liberties and freedoms. So far as we are concerned, we will not strike down the Constitution of our State for this purpose; neither will we follow the crowd. The scheme described in the petition now under consideration permits a manufacturer, under the guise of protecting his property rights in a trade name and trademark, to control the price of his product down through the channels of trade into the hands of the ultimate consumer, and into

the hands of persons with whom he has no contractual relation whatever. This statute clearly violates the provisions of the due process clause of the Constitution of the State of Georgia.'"

And further, at page 974, the Court concluded:

"In view of the above, it will be determined that §2, Chapter 44 of the Laws of 1937 (§49-2-2, N.M.S.A. 1953) is unconstitutional and void as an arbitrary and unreasonable exercise of the police power without any substantial relation to the public health, safety, or general welfare insofar as it concerns persons who are not parties to contracts provided for in §1, Chapter 44, Laws of 1937 (§49-2-1, N.M.S.A. 1953)."

In *Union Carbide & Carbon Corp.* v. *Bargain Fair, Inc., supra,* the Court, in holding that the Fair Trade Act was an unauthorized exercise of the police power and contravened the "due process" provision of the Ohio Bill of Rights, said:

"In recent years and in the light of present-day conditions, courts have become more critical of the fair trade acts and have invalidated parts of them with increasing frequency.

"Basically, those cases approving the acts *in toto* proceeded on the theory that a producer of a trademarked product, who has expended money and effort in establishing it on the market at a specified selling price, ought not to be subjected to the injury which cut-rate sales would entail; that the ownership of a trademark and goodwill is a property right which the law should protect and is assertable against all who sell the producer's products; and that price cutting is not only damaging to the goodwill and business of the producer but has a deleterious effect on the public as well. Also brought into the equation is the economic philosophy of the fair trade acts, which it is said bear a real and substantial relationship to the public welfare, and the proposition that their enactment is a matter for legislative determination in the exercise of the police

power, with which the courts should not interfere.

"On the other hand, the position taken by other courts is that the real effect of the fair trade acts is anticompetitive price fixing rather than the protection of the goodwill of trademarked products. Goodwill should be measured by the price the goods can command in a competitive market and not by allowing the manufacturer to sell at a pegged retail price which he himself selects. In normal times, the inflexible price arrangements which the acts sanction are opposed to our traditional concepts of free competition for the benefit of the consuming public, and the clause binding those who do not enter into a price-fixing contract with the manufacturer offends such concepts. Hence, the nonsigner clause interferes with the constitutional right of the owner of property to dispose of it as he pleases and represents the exercise of the police power for a private as opposed to a public purpose."

While much is said of the right of owners of trademarks and brands to have their property rights protected, and certainly such rights should be protected to such extent as may be compatible with the constitutional rights of the public, we do not think that the protection which the Act in question purports to give is reasonably related to the public morals, health or welfare, and, as this Court has recently in the case of *State v. Memorial Gardens Development Corp.*, 143 W. Va. 182, 101 S. E. 2d 425, said:

"All legislation under the police power must be within the constitutional inhibitions. Milkint v. McNeeley, 113 W. Va. 804, 169 S. E. 790; Eubank v. City of Richmond, 226 U. S. 137, 33 S. Ct. 76, 57 L. Ed. 156."

Though it is of great advantage to the plaintiff to have additional protection in the provision making it unlawful to sell trademark or brand articles below the prices fixed by the manufacturer, nevertheless the manufacturer or distributor is not deprived of his rights to

make reasonable contracts with others in regard to the price at which such merchandise shall be sold, and he can protect himself by suits for enforcement or damages. To extend such manufacturer's or distributor's rights to the public generally is but another improper exercise of the police power and not in our opinion warranted, and being such is void, as in violation of Section 10 of Article III of the Constitution of West Virginia, which provides that:

> "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers."

So from the foregoing we are of the opinion, and so hold, that the so-called "Fair Trade Act", Chapter 123, Acts of the Legislature, 1937, Regular Session, Chapter 47, Article 11, Section 6 of the Code of West Virginia, as amended, is not a proper exercise of the police power of the state and is unconstitutional, and the answer to the first certified question is in the negative and the answer to the second certified question is in the affirmative.

As there is not before us in the question certified the subject whether a so-called "Fair Trade Act" is within the police power, our decision herein is restricted to the specific legislative act in question. This Court should consider only such questions as have been decided by the trial court and by it certified here. *Means v. Kidd,* 136 W. Va. 514, 67 S. E. 2d 740.

As to the third and fourth questions certified, there is, in view of the foregoing conclusion as to the invalidity of such Act, hardly any necessity for determining these two questions certified, but inasmuch as the Circuit Court passed upon these points, and the questions being so certified to this Court while the case remains pending in that Court, we will discuss such questions to a limited extent.

The third question is whether the Fair Trade Act is void because of the Federal Statute known as the Sher-

man Anti-Trust Act, inasmuch as the Fair Trade Act was enacted before the Federal Statutes known as the Miller-Tydings Act and the McGuire Act, and there was thereafter no re-enactment of the West Virginia Fair Trade Act. These Federal Statutes made the Fair Trade Acts of states exceptions to the Sherman Anti-Trust Act, and effective in interstate commerce. It is generally held that where a legislative act is totally void, not in any degree enforceable at the time of its enactment, it cannot be converted into a valid statute by the removal of the cause of its invalidity as this could be done only by a re-enactment of the statute after removal of the cause of the invalidity. *State* v. *Miller,* 66 W. Va. 436, 66 S. E. 522. But there is much authority that holds that this inability to enforce the provisions of a statute, as was here the inability to enforce the statute in so far as it applied to interstate commerce before the subsequently enacted Miller-Tydings and McGuire Acts, does not invalidate the Act, but simply leaves it ineffective to the extent it may at any time be unenforceable. *State of West Virginia* v. *Adams Express Co.,* 219 Fed. 794; *State* v. *Davis,* 77 W. Va. 271, 87 S. E. 262. Regardless of what may be the correct rule, this point has become moot in this case and unnecessary for decision, because of our ruling on the first two questions. It makes no difference here whether the Fair Trade Act may have been valid or invalid because of limitation of the said Sherman Anti-Trust Act.

The remaining question is whether or not the Fair Trade Act, because of Section 6 thereof providing for rights against non-signers of the contracts made by the manufacturers with their distributors or retailers, is void for the reason that the title to the Act does not meet the requirements of Section 30, Article VI of the Constitution of West Virginia. The Circuit Court held that the Act was void because of its failure in this regard.

The pertinent Constitutional provision, namely, Article VI of Section 30, is as follows:

"No act hereafter passed, shall embrace more than one object, and that shall be expressed in

the title. But if any object shall be embraced in an act which is not so expressed, the act shall be void only as to so much thereof, as shall not be so expressed, and no law shall be revised, or amended, by reference to its title only; but the law revived, or the section amended, shall be inserted at large, in the new act * * *".

The title to the Fair Trade Act, Chapter 123, Acts of the Legislature, 1937, Regular Session, is as follows:

"An act to protect trade-mark owners, producers, distributors and the general public against injurious and uneconomic practices in the distribution of competitive commodities bearing a distinguishing trade-mark, brand or name, through the use of voluntary contracts establishing minimum resale prices and providing for refusal to sell unless such minimum resale prices are observed."

This act was involved in the recent case of *General Electric Co.* v. *Wender*, 151 F. Supp. 621, in which the District Court of the United States for the Southern District of West Virginia, held that the title to the Act was not sufficient under the aforesaid constitutional provision, although this case is now pending on appeal to the United States Court of Appeals for the Fourth Circuit. In the District Court's opinion, Judge Moore said:

"It has been held many times by the Supreme Court of Appeals of West Virginia that 'the language of the title' of an act of the legislature 'should be construed in its most comprehensive and liberal sense favorable to the validity of the act;' that only where it is 'manifest that the contents of the act are not within the title' should the act be declared invalid; and that 'all doubt will be resolved in favor of the constitutionality of the statute.' It has been said that the test of sufficiency is whether the title 'will convey to persons interested in the actual subject matter enough information to provoke the reading of the act,' and that so long as the title fairly reflects 'the purpose of the act, it was not necessary to descend to particulars in the title.' See State v. Mines,

1893, 38 W. Va. 125, 18 S. E. 470; City of Wheeling ex rel. Carter v. American Casualty Co., 1948, 131 W. Va. 584, 48 S. E. 2d 404, 410; Sypolt v. Shaffer, 1947, 130 W. Va. 310, 43 S. E. 2d 235, 239; State ex rel. Hallanan v. Thompson, 1917, 80 W. Va. 698, 93 S. E. 810.

"On the other hand, it has been made equally clear by decisions of the same court that in cases where the act itself flatly contradicts what its title imports it must be stricken down under the constitutional mandate. In the case of Stewart v. Tennant, 1903, 52 W. Va. 559, at page 569, 44 S. E. 223, at page 227, one of the greatest of West Virginia Judges, Brannon, in discussing the constitutional provision concerning clear titling of acts of the legislature says:

" 'The purpose of this provision, as declared by the courts, is to prevent the enactment of laws, in a clandestine and stealthy manner, by compelling a statement in the title of the act, of its aim and purpose, to the end that the public, as well as members of the legislature may conveniently and certainly know the character of pending legislation. But for this provision, omnibus bills could be put through the legislature, carrying all kinds of measures, concealed in all forms, and neither legislator nor the public could, with any degree of certainty, fully know their contents. * * *

" 'Although the courts construe this provision, in cases not within the mischiefs sought to be remedied by it, so as to sustain legislation, they rigidly enforce it in all cases falling within those mischiefs, and it makes no difference how meritorious the act may be. If the constitutional provision has been disregarded in the passage of it, it cannot be sustained.' "

And as was said by this Court in *Elliott* v. *Hudson,* 117 W. Va. 345, 185 S. E. 465:

"The purpose of such a constitutional provision is the protection of both the legislators and the public. At the outset, it is advisable that by the title of a bill pending in a legislature, all persons shall be thereby reasonably informed of its purport—the legislator in order that he may be

initially advised of the nature of the proposition which he is called upon to support or oppose; and the citizen that he may have opportunity to advocate or resist the proposed enactment. To submerge an important proposition in the body of an act with wholly inadequate reference thereto, if any, in the title, not only is subversive of the principle just discussed that all interested persons should be fairly informed of the import of pending legislation, but is destructive of the American concept of the necessity of open consideration of legislative matters. Such concealment tends to deception. And, then, after the passage of an act, the sufficiency of its title is of primary importance, both as to those who might claim advantage of its provisions, and the persons against whom it will operate. For these reasons, a title which does not furnish at least a 'pointer' to a challenged provision of the act is insufficient."

The title to the Fair Trade Act so enacted by the Legislature does not sufficiently indicate that non-signers of contracts for the sale of merchandise at prices fixed by the manufacturers or distributors are included within its terms and the words "to protect * * * the general public against injurious and uneconomic practices in the distribution of competitive commodities * * *" do not in our opinion apprise the public that they may become pecuniarily liable for a violation of its provisions as specified in Section 6 of the Act.

For the reasons stated, we are of the opinion to, and so hold, that the so-called "Fair Trade Act", Chapter 123, Acts of the Legislature, 1937, Regular Session, is not a proper exercise of the police power and is unconstitutional and void as violating the due process of law provisions, and as not containing a title sufficiently expressing its purpose, as required by the Constitution of West Virginia.

*Affirmed in part; reversed in part.*

GIVEN, JUDGE, dissenting:

Since the majority decides that the title to the Act in question was insufficient, it necessarily follows that the

Act was void from its supposed beginning. That being true, the Act was never of any force, and could not have actually violated or affected any constitutional or other right of any person. Nevertheless, the majority proceeds, in violation of universally recognized rules relating to the duties of courts in regard to adjudging solemn Acts of Legislatures void, to decide constitutional questions. The sufficiency of the title to the Act was logically the first question to have been considered by the Court.

My understanding of the majority opinion, as it relates to the constitutionality of the Fair Trade Act, is that the power of the Legislature in the passage of the Act in question was so arbitrarily exercised as to render the Act itself unconstitutional and, impliedly, at least, that the passage of a Fair Trade Act is within the legitimate reaches of the legislative branch of the State Government. I agree that such legislation is within the police power of the State, and that such power must not be arbitrarily or capriciously exercised. I can not believe that the power of the Legislature as to the Act here involved was arbitrarily exercised.

The only basis for the holding that the power was arbitrarily exercised rests on the inclusion in the Act of the provisions relating to non-signers of contracts, it being contended that such provisions constitute arbitrary interference with the rights of freedom of contract, amounting to denial of due process, and not within the meaning of the general welfare provision.

All pertinent authority, I think, is to the effect that "Private contract rights must yield to the public welfare". Part Point 9, Syllabus, *Mill Creek Coal & Coke Co.* v. *Public Service Commission*, 84 W. Va. 662, 100 S. E. 557, 7 A. L. R. 1081. See *Public Service Commission of West Virginia* v. *Harpers Ferry and Potomac Bridge Co.*, 114 W. Va. 291, 171 S. E. 760, Certiorari denied 292 U. S. 624, 54 S. Ct. 628, 78 L. ed. 1479. In *Chicago, Burlington & Quincy Railroad Co.* v. *McGuire,* 219 U. S. 549, 567, 31 S. Ct. 259, 262, 55 L. ed. 328, Mr. Justice Hughes, speaking for a full Court, said: "* * * But it was recognized in the cases

cited, as in many others, that freedom of contract is a qualified, and not an absolute, right. There is no absolute freedom to do as one wills or to contract as one chooses. The guaranty of liberty does not withdraw from legislative supervision that wide department of activity which consists of the making of contracts, or deny to government the power to provide restrictive safeguards. Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community. Crowley v. Christensen, 137 U. S. [86] at page 89, [11 S. Ct. 13, 34 L. Ed. 620]; Jacobson v. Commonwealth of Massachusetts, 197 U. S. 11, [25 S. Ct. 358, 49 L. Ed. 643]. 'It is within the undoubted power of government to restrain some individuals from all contracts, as well as all individuals from some contracts * * *' ". This Court has followed the more modern doctrine in holding that the general welfare provision is not to be narrowly limited; that " 'Neither the "contract" clause nor the "due process" clause (of Federal and State Constitutions) has the effect of overriding the power of the State to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort, or general welfare of the community.' *Atlantic Coast Line* v. *Goldsboro*, 232 U. S. 548, 558, 58 L. Ed. 721". Point 3, Syllabus, *Public Service Commission of West Virginia, a Corporation* v. *Harpers Ferry and Potomac Bridge Company, a Corporation, supra.* That questions of Fair Trade are of general welfare, of public concern, I can not doubt. The fact that all states of the Union except three have enacted such legislation is, in my opinion, conclusive proof of such general interest and welfare.

It is true that the courts of a few of the states have held such Acts unconstitutional or, for some other reason, invalid or ineffective, but such Acts have been generally upheld, against seemingly every possible point of attack. See *Max Factor & Co.* v. *Kunsman*, 5 Cal. 2d 446, 55 P. 2d 177; *Scovill Mfg. Co.* v. *Skaggs Pay Less Drug Stores*, 45 Cal. 2d 881, 291 P. 2d 936; *Burroughs Wellcome & Co.* v. *Johnson Wholesale Perfume Co.*, 12 Conn. 596, 24 A. 2d 841; *Klein* v. *National Pressure Cooker Co.*, 31 Del. Ch. 459,

64 A. 2d 529; *General Electric Co.* v. *Klein,* _____ Del. _____, 106 A. 2d 206; *Seagram-Distillers Corp.* v. *Old Dearborn Dist. Co.,* 363 Ill. 610, 2 N. E. 2d 940; *Joseph Triner Corp.* v. *McNeil,* 363 Ill. 559, 2 N. E. 2d 929, 104 A. L. R. 1435; *Barron Motor, Inc.* v. *May's Drug Stores,* 227 Iowa 1344, 291 N. W. 152; *Iowa Pharmaceutical Ass'n.* v. *May's Drug Stores,* 229 Iowa 554, 294 N. W. 756; *Goldsmith* v. *Mead Johnson & Co.,* 176 Md. 682, 7 A. 2d 176; *Home Utilities Co.* v. *Revere Copper & Brass,* 209 Md. 610, 122 A. 2d 109; *General Electric Co.* v. *Kimball Jewelers,* 333 Mass. 665, 132 N. E. 2d 652; *W. A. Sheaffer Pen Co.* v. *Barrett,* 209 Miss. 1, 45 So. 2d 838; *Johnson & Johnson* v. *Weissbard,* 121 N. J. Eq. 585, 191 A. 873; *General Electric Co.* v. *Packard Bamberger & Co.,* 14 N. J. 209, 102 A. 2d 18; *Lionel Corp.* v. *Grayson-Robinson Stores, Inc.,* 15 N. J. 191, 104 A. 2d 304; *Bourjois Sales Corp.* v. *Dorfman,* 273 N. Y. 167, 7 N. E. 2d 30, 110 A. L. R. 1411; *General Electric Co.* v. *Masters,* 307 N. Y. 229, 120 N. E. 2d 802; *Ely Lilly & Co.* v. *Saunders,* 216 N. C. 163, 4 S. E. 2d 528, 125 A. L. R. 1308; *Union Carbide & Carbon Corp.* v. *Bargain Fair,* 58 Ohio O. 145, 130 N. E. 2d 255; *Burche Co.* v. *General Electric Co.,* 382 Pa. 370, 115 A. 2d 361; *Miles Laboratories* v. *Owl Drug Co.,* 67 S. D. 523, 295 N. W. 292; *Frankfort Distillers Corp.* v. *Liberto,* 190 Tenn. 478, 230 S. W. 2d 971; *Seagram Distillers Co.* v. *Corenswet,* 198 Tenn. 644, 281 S. W. 2d 657; *Sears* v. *Western Thrift Stores of Olympia,* 10 Wash. 2d 372, 116 P. 2d 756; *Weco Products Co.* v. *Reed Drug Co.,* 225 Wis. 474, 274 N. W. 426; *Bulova Watch Co.* v. *Anderson,* 270 Wis. 21, 70 N. W. 2d 243; *Union Carbide and Carbon Corp.* v. *White River Distrib.,* 224 Ark. 558, 275 S. W. 2d 455; *Olin Mathieson Chemical Corp.* v. *Francis,* 134 Colo. 160, 301 P. 2d 139; *Bristol-Myers Co.* v. *Webb's Cut Rate Drug,* 137 Fla. 508, 188 So. 91; *Liquor Stores, Inc.* v. *Continental Distilling Corp.* (Fla.), 40 So. 2d 371; *Seagram Distillers Corp.* v. *Ben Greene, Inc.* (Fla.), 54 So. 2d 235; *Miles Laboratories* v. *Eckerd* (Fla.), 73 So. 2d 680; *Grayson-Robinson Stores, Inc.* v. *Oneida,* 209 Ga. 613, 75 S. E. 2d 161; *Bissell Carpet Sweeper Co.* v. *Shane Co.,* _____ Ind. _____, 143 N. E. 2d 415; *Dr. G. H. Tichenor Antiseptic Co.* v. *Schwegmann Bros.,* 231 La. 51, 90 So. 2d 343; *Shakespeare Co.* v. *Lippman's Tool Shop Sporting*

*Goods Co.,* 334 Mich. 109, 54 N. W. 2d 268; *McGraw Electric Co. v. Lewis & Smith Drug Co.,* 159 Neb. 703, 68 N. W. 2d 608; *General Electric Co. v. Wahle,* 207 Ore. 302, 296 P. 2d 635; *General Electric Co. v. Thrifty Sales, Inc.,* 5 Utah 2d 326, 301 P. 2d 741; *Benrus Watch Co. v. Kirsch,* 198 Va. 94, 92 S. E. 2d 384; *Skaggs Drug Center, a Corporation v. General Electric Company* (N. M.), 315 P. 2d 967; *Union Carbide & Carbon Corp. v. Bargain Fair, Inc., et al.,* 167 Ohio St. 182, 147 N. E. 2d 481. Such Acts have been held valid by the Supreme Court of the United States. See *Old Dearborn Distributing Co. v. Seagram Distillers Corp.* (1936), 299 U. S. 183, 57 S. Ct. 139, 81 L. ed. 109.

Sufficient has been said here to indicate my confirmed views. Every question appears to have been discussed and re-discussed in the case cited. No useful purpose could be served by any further discussion in this dissent. Being of the views indicated, I respectfully dissent.