PHILIP KLEIN, trading as Phil's Distributors,
                                    Defendant Below, Appellant,

*vs.*

NATIONAL PRESSURE COOKER COMPANY, a corporation of the State of Wisconsin,
                                    Complainant Below, Appellee.

*Supreme Court, on Appeal, February 21, 1949.*

RICHARDS, C. J., and TERRY, CAREY, PEARSON, and LAYTON, JJ., sitting.

*F. William Carr,* of the firm of Killoran & Van Brunt, for appellant.

*David F. Anderson,* of the firm of Southerland, Berl & Potter, for appellee.

TERRY, Judge, delivering the opinion of the court:

The sole question to be determined is whether or not the title of "The Fair Trade Act" (*Chapter* 201, *Volume* 43, *Laws of Delaware*) is sufficient to give a fair and reasonable notice to the legislators and to the general public of the subject matter of the legislation proposed.

The title and pertinent provisions of the Act are as follows:

"An Act to protect trademark owners, producers, distributors and the general public against injurious and uneconomic practices in the distribution of competitive commodities bearing a distinguishing trademark, brand or name, through the use of voluntary contracts establishing minimum resale prices and providing for refusal to sell unless such minimum resale prices are observed."

Under *Section* 1 certain terms are defined, such as commodity, producer, wholesaler, retailer and person.

*Section* 2 provides that no contract relating to the sale or resale of a commodity which bears a trademark, brand or name of the producer or distributor shall be deemed in violation of any law of Delaware by reason of the provisions under which the seller requires the buyer not to sell at less than the minimum prices established by the seller.

*Section* 3 provides that "for the purpose of preventing evasion of the resale price restrictions imposed in respect of any commodity by any contract entered into pursuant to the provisions of this Act", certain specified practices,

such as combination sales, shall be deemed a violation of such resale price restrictions.

*Section* 4 provides that the minimum resale price may be fixed by only the owner or distributor specifically authorized by the owner of the trademark, brand or name.

*Section* 5 exempts certain resales which otherwise would be covered by a contract entered into under the Act.

*Section* 6 provides:

"Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of this Act, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

*Section* 7 provides that the Act shall not apply to the contracts between producers.

*Section* 8 contains the usual severability clause.

*Section* 9 repeals inconsistent Acts.

*Section* 10 designates the Act to be known as "Fair Trade Act".

The appellant contends that the Act is unconstitutional, as applied to him, by reason of the failure of the title of the Act to comply with the requirements of *Article II, Section* 16 of our *Constitution*.

*Article II. Section* 16 provides:

"No bill or joint resolution, except bills appropriating money for public purposes, shall embrace more than one subject, which shall be expressed in its title."

Two distinct subjects are included in the constitutional provisions; first, that no bill shall embrace more than one subject; the second, with which we are concerned, that the subject shall be expressed in the title. The question to be decided is whether or not the subject of the Act is expressed

in the title, or, as applicable to the present case, does the title of the "Fair Trade Act" adequately express the subject of the Act notwithstanding that by *Section* 6 it purports to affect persons who are not parties to "voluntary contracts establishing minimum resale prices" as well as parties to such contracts?

The appellant argues that the first part of the title states that the purpose of the Act is to protect trademark owners, producers, distributors and the public; that under the next portion these persons are to be protected against injurious and uneconomic practices in the distribution of competitive commodities bearing a distinguishing trademark, brand or name; that it then concludes by stating how this protection is to be enforced; that is, "through the use of voluntary contracts establishing minimum resale prices and providing for refusal to sell unless such minimum resale prices are observed."

It is urged that the inclusion in the title of the expression "through the use of voluntary contracts establishing minimum resale prices and providing for refusal to sell unless such minimum resale prices are observed" restricts the subject of the Act and implies that its provisions will be applicable only to retailers who voluntarily entered into such contracts, and not to retailers who refrained from so doing. Thus, it is urged, therefore, that that portion of *Section* 6 which reads "whether the persons so advertising, offering for sale or selling is or is not a party to such contract" is invalid, because there is nothing in the title of the Act, nor the subject thereof as expressed in the title, which would put the members of the Legislature or the public on notice that such a novel provision was contemplated or intended to be embraced within the body of the Act. It is also said that the portion as indicated cannot be regarded as germane to the subject of the Act as expressed in the title when consideration is given to the restriction placed on the subject of the Act by embracing within the title the

clause reading "through the use of voluntary contracts establishing minimum resale prices and providing for refusal to sell unless such minimum resale prices are observed."

With the foregoing observations in mind, the appellant says that the title is misleading, and that *Section* 6 of the act, by reason thereof, is invalid as not being within the scope of the title under *Article II, Section* 16 of the *Constitution.*

The question is one of substantial interest. Legislative acts should not be disturbed except in clear cases, and then only upon weighty considerations. Each case dealing with the subject must of necessity be determined upon its own merits. Nevertheless, it should be said to those seeking to annul legislative acts on such grounds as here presented that it has consistently been the policy of this court to construe the provisions of *Article II, Section* 16 of the *Constitution* most liberally, and whenever possible, to sustain rather than to destroy the legislation. Especially is this so in the light of the general rule that each legislative enactment is cloaked with the presumption of constitutionality and should not be invalidated unless the circumstances be shown beyond doubt to do violence to the provisions of the article and section aforesaid.

In many instances our courts have quoted with approval the observations of Judge Cooley, *Const.Lim.*, (*8th Ed.*), *Vol.* 1, *p.* 296, that the purpose of the provision is,

"First, to prevent hodgepodge or logrolling legislation; second, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles give no intimation * * *; third, to fairly apprise the people through publication of legislative proceedings as is usually made of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon by petition or otherwise, if they shall so desire."

We have repeatedly said, in substance, that the principal object of the constitutional provision is that the title

of the act when published shall be sufficiently comprehensive to give to the people, as well as to the members of the Legislature, fair and reasonable notice of the subject matter of the legislation proposed, thus preventing deception by the inclusion of provisions of which the title gives no intimation whatsoever. This statement, however, does not include within it the thought that a title of an act is intended to furnish a synopsis or index to the sections thereof. All that is required is that the language be of sufficient import to give reasonable intimation of the subject matter dealt with. In determining whether or not the subject of the act is expressed in the title, the whole language of the act should be considered as well as its manifest purpose and scope. *Monaghan v. Lewis,* 5 *Pennewill* 218, 59 *A.* 948, 10 *Am.Cas.* 1048; *Fouracre v. White,* 7 *Boyce* 25, 102 *A.* 186; *Wilmington Trust Co. v. Highfield,* 4 *W. W. Harr.* 394, 153 *A.* 864; *State v. Emerson,* 1 *Terry* 328, 10 *A.2d* 515; *Clendaniel v. Conrad,* 3 *Boyce* 549, 83 *A.* 1036, *Ann. Cas.* 1915*B*, 968; *State v. Grier,* 4 *Boyce* 322, 88 *A.* 579; *State v. Ferschke,* 2 *Boyce* 477, 81 *A.* 401; *In re Cypress Farms Ditch,* 7 *W. W. Harr.* 71, 180 *A.* 536.

Upon a reading of the title of the present act the whole purpose thereof becomes apparent; that is, the protection of owners of trademarks and brand names, together with the public, from cut-throat and unfair competition respecting the retail sale of such commodities. The objection of the appellant that the words "through the use of voluntary contracts" are deceptive and misleading because no intimation whatsoever could be gathered therefrom that the act would apply to anyone offering for sale or selling any commodities who is not a party to such contract (*Sec.* 6) cannot be sustained. It seems to us that such an objection is answered by the explanation that the words "through the use of voluntary contracts" merely describe the method by which the desired protection against price cutting is to be obtained, for without a voluntary contract no price restriction is binding upon anyone.

We think the provisions of the act are sufficiently expressed in the title, and that that portion of the title relied on by the appellant, "through the use of voluntary contracts", as being more restricted than the language employed under *Section 6,* is reasonably capable of the construction that it is merely descriptive of the method by which retail prices are to be established and the general intent of the act carried out. *Goldsmith v. Mead Johnson & Co.,* 176 *Md.* 682, 7 *A.2d* 176, 125 *A.L.R.* 1339.

In the light of our past decisions we cannot agree with the conclusion reached in the case of *Bristol-Meyers v. Webb's Cut-Rate Drug Co.,* 137 *Fla.* 508, 188 *So.* 91, wherein that court in dealing with a similar statute reached a different conclusion, nor do we think, as the appellant contends, that our conclusion as here expressed can be said to be inconsistent with that reached by this court in the case of *State v. Emerson,* 1 *Terry,* (40 *Del.*) 233, 8 *A. 2d* 154.

For the reasons indicated, the decree as entered below is sustained and an order will be entered accordingly.