FARMERS FOR FAIRNESS, an unincorporated association of landowners, Delaware State Farm Bureau, Inc., John Carey, Henry Carey, Mary Moore, Agnes Heather, Cartanza Farms Limited Partnership, Sandra L. Cartanza, E.Z. Farms, Inc., Harman Brothers, LLC, Joseph A. Messina, Jr., Janet Messina, John Messina, Maureen Messina, and Thomas E. Webb, Plaintiffs,

v.

KENT COUNTY, a political subdivision of the State of Delaware, Kent County Levy Court, the governing body of Kent County, Delaware, David R. Burris, Ronald D. Smith, Allan F. Angel, P. Brooks Banta, Donald A. Blakely, Richard E. Ennis, and Harold J. Peterman, in their official capacities as members of the Kent County Levy Court, Defendants.

C.A. No. 2429–VCS.

Court of Chancery of Delaware.

Submitted: Nov. 27, 2007.
Decided: Feb. 5, 2008.

William E. Manning, Esquire, Richard A. Forsten, Esquire, James D. Taylor, Jr., Esquire, Buchanan Ingersoll & Rooney, Wilmington, Delaware, Attorneys for Plaintiffs.

Daniel A. Griffith, Esquire, Joseph Scott Shannon, Esquire, Marshall Dennehey Warner Coleman & Goggin, Wilmington, Delaware, Attorneys for Defendants.

## OPINION

STRINE, Vice Chancellor.

### I. *Introduction*

In this case, the plaintiffs, a collection of organizations and individuals interested in protecting their ability to develop land in Kent County, are suing the defendants, Kent County, its Levy Court, and the Levy Court's members (whom I will refer to collectively as "Kent County"), in an attempt to invalidate the "Bulk Utilities Ordinance." The plaintiffs' primary concern about the Bulk Utilities Ordinance is that it, if validly adopted, would limit the density of development on parcels of land outside Kent County's designated "Growth Zone" by requiring, among other things, conditional use approval for community wastewater systems and that community wastewater systems serve entire community sewer basins rather than just individual subdivisions. But the present means by which they seek to achieve the invalidation of the Ordinance is to claim that the Ordinance, as finally adopted with amendments, had a title that did not fairly describe the subject matter that the Ordinance addressed. That problem, the

plaintiffs said, resulted in a violation of 9 Del. C. § 4110, the Delaware Code section addressing the procedures Kent County must use to adopt legislation. Relatedly, the plaintiffs argue that the Ordinance, as ultimately enacted, amended Kent County's Zoning Code. In 9 *Del. C.* § 4911, the General Assembly sets forth additional procedural requirements that Kent County must use in amending its Zoning Code, requirements that were not met in the process used to adopt the Bulk Utilities Ordinance.

In this decision, I conclude that the title of the Bulk Utilities Ordinance satisfied the requirement in § 4110 that the title of a bill fairly identify the subject matter it addressed. Although the title contained some linguistic infelicity, the title clearly led any reasonable reader to understand that the bill would amend the pre-existing sections of the Kent County Code that regulated the type of wastewater systems that could be placed on land and where different types of such systems could be used. Moreover, the County gave notice of the subject matter of the bill to citizens in advance of key public hearings on the bill, notice that included the bill's synopsis, a synopsis that provided clear notice that the bill, if enacted, would put into place important restrictions on the use of certain types of wastewater systems outside of the Growth Zone. That notice was clearly effective, as it is undisputed that affected landowners, including several of the plaintiffs, showed up at hearings to oppose the bill and suggest narrowing amendments. Therefore, I reject the plaintiffs' attempt to invalidate the Bulk Utilities Ordinance on the ground that Kent County violated § 4110.

By contrast, I find that the Bulk Utilities Ordinance amended Kent County's Zoning Code. Section § 4911 of Title 9 contains clear requirements for the procedures that must be used when Kent County amends its Zoning Code. Kent County did not follow those procedures. As a result, the portion of the Ordinance amending the Zoning Code is invalid and stricken. Because of the Ordinance's severability provision, I do not invalidate the entire Ordinance but only the portion of the Ordinance that amended the Zoning Code.

## II.  *Factual Background*

### A.  *The Title Of The Bulk Utilities Ordinance*

The Bulk Utilities Ordinance, which was designated Ordinance LC–05–20 at that time, was introduced by Kent County Levy Court Commissioner P. Brooks Banta on December 20, 2005.[1] The Bulk Utilities Ordinance was later enacted by the Kent County Levy Court on July 18, 2006 as Ordinance 06–24.[2] Despite the change in ordinance number, the title of the Bulk Utilities Ordinance remained the same throughout the entire process. That title states: "An Ordinance to amend Kent County Code, Vol. II, Chapter 187, Subdivision and Land Development, § 187–5. Definitions, to revise the definition of '*Sanitary Sewage Disposal, Community*' and to add a definition for '*Sanitary Sewage Disposal with Spray Irrigation*', and § 187–53 Minimum Requirements."[3] The portion of that title at issue in this case is "§ 187–53 Minimum Requirements."[4] Because the title was infelicitously drafted, it is not perfectly clear which verb applies to

---

1.  2KCF BU ("Record") at 1.

2.  *Id.* at 393.

3.  *Id.* at 1, 393.

4.  The plaintiffs do not dispute the revision of the definition of Sanitary Sewage Disposal, Community and the addition of a definition for Sanitary Sewage Disposal with Spray Irri-

" § 187–53 Minimum Requirements." The plaintiffs, however, agree that when read in the context of the whole title that portion of the title indicates that the Ordinance *includes* amendments to § 187–53 Minimum Requirements.[5]

The notice that Kent County published in advance of both the public hearing before the Regional Planning Commission on January 26, 2006 and the public hearing before the Levy Court on April 11, 2006 contained the title of the Ordinance and the synopsis at the end of the Ordinance. That synopsis plainly stated:

> This Ordinance would establish siting and bulk standard requirements for utility infrastructure to be established within new residential developments in Kent County. This Ordinance would also establish an area outside of, and adjoining, the growth zone within which development could be permitted at a density of one (1) dwelling unit per acre with community wastewater treatment systems. This Ordinance would also have the effect of eliminating rapid infiltration wastewater treatment systems from the list of community wastewater system options within residential subdivisions.[6]

### B. *The Pre–Existing § 187–53 Minimum Requirements*

Because the title of the Bulk Utilities Ordinance references § 187–53, the scope of pre-existing § 187–53 plays an important role in understanding the title. Section 187–53 sets the "minimum requirements for the installation of improvements in subdivisions."[7] Section 187–53 addresses a bevy of improvements, including things such as streets, water supply facilities, underground utilities, and sanitary sewage facilities. I have no difficulty in concluding, as a factual matter, that any interested citizen who saw the notices of the public hearings on the Bulk Utilities Ordinance was on notice that Kent County was planning to amend § 187–53 in a manner that would affect sanitary sewage disposal. That the Ordinance focused on sewage disposal was clear from the title's references to sewage disposal definitions and the additional information in the notices describing its effect on community wastewater systems.

The subsection of pre-existing § 187–53 that dealt with sanitary sewage facilities contained detailed requirements for wastewater disposal. Among those requirements was that community on-site sewage treatment and disposal systems had to comply with all applicable requirements of the Delaware Department of Natural Resources and Environmental Control ("DNREC").[8] In addition, § 187–53 required certain types of sanitary sewage disposal for certain subdivisions. The type of sanitary sewage disposal required for a subdivision varied based on two factors—the number of lots in the subdivision and whether the subdivision was located within Kent County's Growth Zone.[9] Subdivisions

---

gation. Tr. Of Oral Arg. (Nov. 27, 2007) ("Tr.") at 24.

5. *Id.* at 25. At oral argument, the plaintiffs' counsel acknowledged: "I think what it's signaling you—and I'm being fair about this—is that the ordinance includes amendments to Section 187–53 as minimum requirements." *Id.*

6. Record at 22, 147; *see also id.* at 6.

7. Kent County Op. Br. Ex. C at 187:42.

8. *Id.* at 187:45.

9. *Id.* at 187:46–47. The Growth Zone "encompasses an area that Kent County has determined new development should be encouraged. To that end, incentives such as area and bulk requirement reductions are provided to encourage development within the zone rather than in the more rural areas of the County." Kent Cty. C. § 205–397.2(A)(1). The Growth Zone "is an area identified by Kent County where infrastructure such as water, sewer, and transportation facilities exists or is

outside the Growth Zone could have individual on-site septic, but as the number of lots grew, the required acreage for each lot also grew. The allowed density decreased in a graduated scale from one dwelling unit per acre for subdivisions with ten or less lots to one dwelling unit per four acres for subdivisions with fifty-one or more lots. This requirement would, one presumes, encourage subdivision developers to use community wastewater systems. Community wastewater systems were permissible for subdivisions outside the Growth Zone. The permissible types of community wastewater system for subdivisions outside the Growth Zone also varied by the number of lots in the subdivision. For subdivisions with twenty-six to fifty lots, the community wastewater system had to use subsurface disposal or County sewer service if it was legally available. For subdivisions with fifty-one or more lots, the community wastewater system could use spray irrigation disposal, rapid infiltration beds, deep well injection, drip irrigation, another DNREC-approved system, or County sewer service if it was legally available.

### C. The Original Draft Of The Bulk Utilities Ordinance

The original draft of the Bulk Utilities Ordinance—the draft introduced on December 20, 2005—made several changes to § 187–53 Minimum Requirements. The Ordinance made two material amendments to the existing subsection on sanitary sewage facilities. First, the Ordinance eliminated the use of rapid infiltration beds as a community wastewater system option.[10]

Second, the Ordinance eliminated the use of community wastewater systems for areas outside the Growth Zone and farther than a quarter-mile from the Growth Zone boundary.[11] That proposed change was substantial because it meant that any subdivision located more than a quarter-mile outside the Growth Zone would be required to use on-site septic and would have to comply with the low density requirements for on-site septic.

The original draft of the Bulk Utilities Ordinance also added a new subsection to § 187–53. That new subsection, entitled "Utility Infrastructure Bulk Standards," stated that "[p]arcels established or proposed for the purpose of occupancy by utility structures and uses shall be considered 'nonresidential use properties' and as such shall be subject to the opaque buffer and landscape screening requirements of § 187–79."[12] The new subsection also established setbacks and noise and height limitations for community sanitary sewer disposal system components.[13]

### D. The Public Hearings On The Bulk Utilities Ordinance

After the original draft Ordinance was introduced in December 2005, the Kent County Regional Planning Commission held a public hearing on the Ordinance on January 26, 2006. Notice for that meeting was provided on January 11.[14] There was public comment both for and against the Ordinance at the January 26 hearing.[15] Additional public comment took place at later Regional Planning Commission Public Hearings on March 2[16] and March 9.[17]

---

planned to serve development." Kent Cty. C. § 205–397.2(A)(2).

10. Record at 3.

11. Id. at 3.

12. Id. at 4.

13. Id. at 4–5.

14. Id. at 22.

15. See id. at 42–59.

16. See id. at 65–68.

17. See id. at 81–99.

At the end of the March 9 Regional Planning Commission meeting, the Commission voted 5–1 to recommend approval of the Bulk Utilities Ordinance as originally drafted.

After the Regional Planning Commission recommended approval of the Ordinance, the Levy Court scheduled a public hearing on the Ordinance for April 11, 2006 and published advanced notice of that public hearing on March 26. The April 11 public meeting was well-attended by individuals both for and against the Ordinance, including several of the plaintiffs in this case.[18] In fact, there were so many interested citizens at the meeting that the President of the Levy Court had to ask attendees standing in the back of the room to find seats in the hall where they would be able to watch video of the hearing.[19] After taking comments for *over five hours,* the Levy Court tabled the Ordinance.[20]

### E. *The Amendments To The Bulk Utilities Ordinance*

A week later, the Ordinance was lifted from the table and amended at a Levy Court meeting on April 18.[21] After being tabled at the end of the April 18 meeting, the Ordinance was again lifted from the table and amended at a Levy Court meeting on July 18.[22] At the end of that July 18 meeting, the Levy Court voted 5–2 to approve the Ordinance.[23]

Two of the amendments made at the April 18 meeting are particularly relevant. The "Transition Zone Amendment" removed the outright prohibition on community wastewater systems beyond a quarter-mile outside the Growth Zone and replaced it with a mandate to "consider the establishment of a Transition Zone extending a defined distance west of the existing Growth Zone ... for the purpose of creating graduated density between the Growth Zone ... and the remaining areas in western Kent County" in subsequent Kent County Comprehensive Plans.[24] The "Regionalization Amendment" amended the new Utility Infrastructure Bulk Standards subsection of § 187–53 by requiring that community wastewater systems be regionalized— meaning that those systems would be required to serve more than one subdivision—and defining community wastewater systems as public utilities that would therefore be subject to conditional use approval under other pre-existing provisions of the Kent County Code.[25]

Two additional amendments to the Bulk Utilities Ordinance were made before it was approved at the July 18 meeting. One amendment added rapid infiltration beds back to the Ordinance as a permissible type of community wastewater system.[26] A second amendment modified the language of the Regionalization Amendment

---

18. *See id.* at 269–297. Henry Carey and Mary Moore were among the plaintiffs in this action who were present at the meeting. *Id.* at 294–95. Although it is difficult to ascertain from the record because of overlapping relationships and the use of entity names, it would not be unreasonable to infer that several other plaintiffs' interests were represented at the April 11 hearing. For example, the President of the Kent County Farm Bureau could be thought to have represented the interests of plaintiff Delaware State Farm Bureau, Inc. and Bill Harman likely represented the interests of plaintiff Harman Brothers, LLC. *See id.* at 287, 289.

19. *Id.* at 272.

20. *Id.* at 220–21.

21. *Id.* at 350–58.

22. *Id.* at 385–90.

23. *Id.* at 390.

24. *Id.* at 305, 352.

25. *Id.* at 304, 353.

26. *Id.* at 389.

to define regionalization.[27] As adopted, the relevant portion of the Regionalization Amendment stated:

> Community sanitary sewer treatment and disposal systems must serve all properties of a public utility as defined under Delaware Code Title 26, which received a Certificate of Public Convenience and Necessity from the Public Service Commission, located in a community sewer basin as delineated in the Kent County Comprehensive Plan. These systems must be sited on separate tax parcels established for the sole purpose of occupancy by utility structures and disposal systems. Community sanitary sewer treatment and disposal systems shall be considered public utilities and public utility uses requiring Conditional Use approval in accordance with the provisions of Chapter 205 [Zoning] and Chapter 187 [Subdivision and Land Development] and shall be considered "nonresidential use properties".... [28]

The amendments discussed above, with the noticeable exception of the portion of the Regionalization Amendment that defined community wastewater systems as public utilities and subjected them to conditional use approval, had been proposed as early as the March 9 Regional Planning Commission meeting.[29] At that meeting, Hans Medlarz, the Kent County Director of Public Works, proposed several amendments to the Ordinance, including allowing rapid infiltration beds, removing the restrictions on the use of community wastewater systems beyond the quarter-mile outside the Growth Zone, and adding a regionalization requirement.[30] Although the Regional Planning Commission did not take action on those proposed amendments, they were forwarded to the Levy Court for further consideration and were part of the record before the April 11 Levy Court meeting.[31]

## III. *Contentions*

The plaintiffs' motion for summary judgment seeks to have the Bulk Utilities Ordinance voided on two bases. The plaintiffs argue that Kent County violated 9 Del. C. § 4110(i)(2) by amending the Bulk Utilities Ordinance after it was put to public hearing. They claim the Ordinance was amended as to a matter of substance not embraced within the title of the Ordinance, and as such Kent County was required to subject that amended Ordinance to all the procedures applied to newly introduced ordinances, which they did not do. Specifically, plaintiffs assert that the Transition Zone and Regionalization Amendments were not embraced by the title of the Bulk Utilities Ordinance.

The plaintiffs also contend that Kent County violated 9 *Del. C.* § 4911(a) when it amended the Kent County Zoning Code without those changes to the Zoning Code having been proposed by or first submitted to the Regional Planning Commission. The change to the Zoning Code that the plaintiffs identify is the portion of the Regionalization Amendment defining community wastewater systems as public utilities subject to conditional use approval.

Kent County filed a cross-motion for summary judgment seeking to have the Bulk Utilities Ordinance upheld as validly enacted.

## IV. *Legal Standard*

Under Court of Chancery Rule 56(h), when the parties have filed cross-motions for summary judgment and, as

27. *Id.* at 389–90.

28. *Id.* at 394.

29. *See id.* at 129–134.

30. *Id.* at 82–83.

31. *Id.* at 136, 165.

here, have not argued that there is an issue of fact material to the disposition of either motion, "the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions." [32] Thus, the usual standard of drawing inferences in favor of the nonmoving party does not apply. [33]

## V. *Legal Analysis*

### A. *Compliance With 9 Del. C. § 4110(i)(2)*

Section 4110 is the general enabling statute for Kent County enacted by the General Assembly. [34] Subsection (h) of § 4110 requires that all actions having the force of law shall be done by ordinance, and subsection (i) of § 4110 places certain requirements on the procedures by which Kent County enacts ordinances. [35] Section 4110(i)(1) states in relevant part that "[n]o ordinance, except ... those relating to the adoption or revisions of the County Code, shall contain more than 1 subject which shall be clearly expressed in its title." [36] Section 4110(i)(2) provides for notice and public hearing for proposed ordinances and backs those requirements with the following requirement:

> After the public hearing, the county government may adopt the ordinance with or without amendment or reject it, but *if it is amended as to any matter of substance which is not embraced within the title of the ordinance,* the county government may not adopt it until the ordinance or its amended sections have been subjected to all of the procedures hereinbefore required in the case of a newly-introduced ordinance. [37]

Although the parties have been unable to find any judicial interpretation or application of § 4110(i), they agree that the limitations that Article II, § 16 of the Delaware Constitution places on the General Assembly are analogous to (and likely inspired) the limitations that § 4110(i) places on the Kent County Levy Court. [38] As such, the parties logically advocate that I adopt the body of law interpreting that section of the Constitution by analogy to form the applicable standard of review in this case, an approach that will have the utility of promoting consistency and reliability in the lawmaking process at various levels within our state. I therefore use the decisions interpreting Article II, § 16 of the Delaware Constitution to interpret the § 4110(i)'s titling requirement.

The "principal object" of the constitutional titling requirement "is that the title of the Act when published shall be sufficiently comprehensive to give to the people, as well as to the members of the Legislature, fair and reasonable notice of the subject matter of the legislation proposed, thus preventing deception by the inclusion of provisions of which the title gives no intimation whatsoever." [39] One of

---

**32.** Ct. Ch. Rule 56(h).

**33.** *Am. Legacy Found. v. Lorillard Tobacco Co.,* 886 A.2d 1, 18 (Del.Ch.2005).

**34.** *See* 9 *Del. C.* § 4110.

**35.** 9 *Del. C.* § 4110(h)-(i).

**36.** 9 *Del. C.* § 4110(i)(1).

**37.** 9 *Del. C.* § 4110(i)(2) (emphasis added).

**38.** Pls. Op. Br. at 10–11; Kent County Rep. Br. at 2. Article II, § 16 of the Delaware

Constitution states: "No bill or joint resolution, except bills appropriating money for public purposes, shall embrace more than one subject, which shall be expressed in its title." DEL. CONST. art. II, § 16.

**39.** *Klein v. Nat'l Pressure Cooker Co.,* 64 A.2d 529, 532 (Del.1949); *see also Opinion of the Justices,* 194 A.2d 855, 856 (Del.1963) ("Fundamentally, [the titling requirement] is designed to prevent deception of the general public and the members of the General Assembly by titles to bills which give no ade-

the purposes of the titling requirement is to "fairly apprise the people through publication of legislative proceedings as is usually made of the subjects of legislation that are being considered, in order that they may have [the] opportunity of being heard thereon by petition or otherwise, if they shall so desire."[40] "All that is required is that the language be of sufficient import to give reasonable intimation of the subject matter dealt with."[41]

"[I]t has consistently been the policy of this Court to construe the provisions of Article 2, Section 16 of the Constitution most liberally, and whenever possible, to sustain rather than to destroy the legislation."[42] Kent County's power to regulate land use, however, is delegated from the General Assembly and as such "compliance with the conditions imposed on the exercise of that power is essential."[43]

quate information of the subject matter of the bills.").

**40.** *Klein,* 64 A.2d at 532.

**41.** *Id.*

**42.** *Id.*

**43.** *Fields v. Kent County,* 2006 WL 345014, at *3 (Del.Ch.2006). I confess to being chary about entering into the semantical battle between the parties regarding whether Kent County must "substantial[ly]" or "full[y]" comply with the requirements with the procedural requirements imposed by the General Assembly before enacting legislation. *Compare Wilmington Trust Co. v. Highfield,* 153 A. 864, 867 (Del.1931) (stating that provisions such as Article II, § 16 " 'should not be so construed as to defeat or embarrass legislation where there has been a *substantial compliance* with its requirements' ") (quoting *Monaghan v. Lewis,* 59 A. 948, 949 (Del. 1905)) *with Fields,* 2006 WL 345014, at *3 (requiring *"full compliance"* with a subsection of § 4110 in a situation where Kent County was regulating land use) *and Carl M. Freeman Assocs., Inc. v. Green,* 447 A.2d 1179, 1182 (Del.1982) (requiring strict compliance rather than substantial compliance with 9 *Del. C.* § 7002, the Sussex County analog to § 4110, where the ordinance at issue was regulating land use). In a case where a plaintiff challenges the validity of legislation adopted by a legislative body elected by the members of a polity, the plaintiff bears the burden to demonstrate the infirmity of that legislation. *See* 6 EUGENE McQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 22:27 (3d ed. 2007) ("An ordinance is presumed to be valid and the burden of proving it invalid is on one who asserts its invalidity."). Unless the court is persuaded that the legislation is invalid for some reason, such as that the legislature in

question did not follow the statutorily required procedures for adopting the legislation, the court should uphold the decision made by the elected officials. Out of respect for our republican form of democracy, judges should be restrained in setting aside decisions of elected bodies invested with legislative authority. *Brown v. Thomson,* 462 U.S. 835, 847–48, 103 S.Ct. 2690, 77 L.Ed.2d 214 (1983) ("Particularly where there is no taint of arbitrariness or discrimination, substantial deference is to be accorded the political decisions of the people of a State acting through their elected representatives.") (internal quotation and citation omitted); 16A AM.JUR.2D *Constitutional Law* § 201 ("In order to show a decent respect for the wisdom, integrity, and patriotism of the legislative branch by which all laws are passed, courts will presume that legislation is valid until the contrary is shown beyond a reasonable doubt. Thus, courts should not pronounce legislation to be contrary to the constitution in doubtful cases.").

In a situation, however, when one legislative body having superior authority—such as the General Assembly—has required that another legislative body—such as the Kent County Levy Court—follow certain procedures, the court must do its duty and enforce the requirements imposed on the latter's lawmaking authority. *See New Castle County v. BC Dev. Assocs.,* 567 A.2d 1271, 1275 (Del. 1989) ("[I]t is axiomatic that delegated power may be exercised only in accordance with the terms of its delegation."). Likewise, when the Constitution requires that the General Assembly abide by certain procedures, the court must enforce those requirements. But in each case, the court should defer to the relevant legislature unless the plaintiff demonstrates that the legislature in question did not comply with the applicable requirements for enactment. In my view, that comes down to

■ Before addressing the plaintiffs' arguments based on § 4110(i)(2), I take up Kent County's argument that § 4110(i)(1)'s exclusion of ordinances amending the County Code from the single subject titling requirement also excludes such ordinances from § 4110(i)(2)'s requirement that ordinances that are amended as to any matter of substance not embraced by the title must go back through the notice and hearing process. I reject that argument. Similar to Article II, § 16 of the Delaware Constitution, § 4110(i)(1) contains two discrete requirements: i) no ordinance shall contain more than one subject and ii) the subject of the ordinance must be clearly expressed in the title.[44] Section 4110(i)(1), like the analogous statutory provisions for New Castle County and Sussex County and unlike Article II, § 16,[45] contains an exception from the single titling requirement for ordinances relating to the adoption or revisions of the County Code. Section 4110(i)(1)'s exclusion of amending ordinances from the single subject titling requirement does not ex-

a binary decision about compliance or noncompliance, which is not aided by the use of adjectival qualifiers, especially ones like full, strict, and substantial, which seem to be rather close synonyms. *See id.* at 1275 (avoiding qualifiers and stating that "when the validity of a zoning regulation is judicially challenged the standard for review is whether the action is in compliance with applicable statutes"); *see also Carl M. Freeman Assocs.*, 447 A.2d at 1181–82 (suggesting its discomfort with the distinction between the strict and substantial compliance standards by finding its decision would be no different under the substantial compliance standard after it struck down an ordinance under the strict compliance standard); *cf. Hollinger Inc. v. Hollinger Int'l, Inc.*, 858 A.2d 342, 376–79 (Del.Ch.2004) (discussing how prior jurisprudence under 8 Del. C. § 271 had converted the terms "substantially all" into the term "substantially half"). Indeed, the cases that apply the strict compliance standard often also emphasize that the legislation is presumed valid. *See Upfront Enters., LLC v. The Kent County Levy Court*, 2007 WL 1862709, at *1 (Del.Ch.2007) ("Although a land use ordinance, as with all of the County's ordinances, is presumed valid, it will be declared invalid if it fails to meet the standards prescribed legislatively."). Unless this is meant to refer to some higher showing required of the plaintiff, that presumption is meaningless as it would simply mean that the plaintiff challenging the validity of legislation had the same burden as any other civil plaintiff, to tilt the judge out of equipoise and into believing that a violation more likely than not occurred. Similarly, I do not read the case law using the phrase "substantial compliance" to mean anything other than that the judge should not set aside legislation when

the plaintiff has not convinced her that the legislation had not complied with the procedural requirements. *See Highfield*, 153 A. at 867 (stating that the substantial compliance standard "is but a particular application to the constitutional provision in question of the general principle which courts everywhere apply, viz., that every presumption is in favor of the constitutionality of legislative enactments and that they should not be declared invalid unless their invalidity is beyond doubt"). If any step were to be taken in this area, it would be more useful to convert the long-standing and important reluctance on the part of judges to set aside the actions of elected officials into a higher burden of persuasion, such that the court would have to be clearly convinced by the plaintiff that the legislature had violated a procedural requirement. In fact, I do not hesitate to admit that I read much of the relevant precedent as embodying just such an approach, which is the plaintiff seeking to invalidate a legislative enactment on procedural grounds must clearly convince the court of a violation and if the plaintiff leaves the court with serious doubt whether a violation has occurred, the deference owed to the political branches requires that the court not disturb their judgment.

44. *See Klein*, 64 A.2d at 531 ("Two distinct subjects are included in [Article II, § 16]; first, that no bill shall embrace more than one subject; the second, ... that the subject shall be expressed in the title."); *duPont v. Dir. of Div. of Revenue of Dep't of Fin.*, 329 A.2d 158, 160 (Del.Super.1974), *aff'd*, 347 A.2d 653 (Del.1975) (same).

45. 9 Del. C. § 1152(a) (New Castle County); 9 Del. C. § 7002(m)(1) (Sussex County).

clude those ordinances from that section's requirement that the subject be clearly expressed in the title. To conclude otherwise would lead to the absurd conclusion that ordinances adopting or revising the County Code do not need titles at all. The requirement that the ordinance's subject be expressed in its title is the requirement that § 4110(i)(2) backstops and it would be nonsensical to conclude that § 4110(i)(1) excludes amending ordinances from that requirement. To so conclude would be to eviscerate the purpose of § 4110 because under that interpretation Kent County could amend an ordinance that originally revised the County Code to address anything and avoid the public notice and hearing process on those post-notice and hearing amendments.

▇▇▇ Having determined that § 4110(i)(2) does apply to the Bulk Utilities Ordinance, I now address the plaintiffs' argument that the title of the Bulk Utilities Ordinance did not embrace the conditional use approval requirement, the mandate to consider a transition zone, and the regionalization requirement. As I concluded above, citizens who saw the title of the Bulk Utilities Ordinance were on notice that Kent County was planning to amend § 187–53 in a manner that would affect sanitary sewage disposal. The scope of that notice is critical here. Because the legislative act disclosed in the title was to amend an existing section, the scope of that notice is defined by the scope of the existing section, § 187–53.[46] In other words, the "the body of the [proposed legislation] must be germane to the subject contained in the legislation to which the title of the amending [legislation] refers."[47] This is a corollary to the well-settled proposition that the title of legislation amending an existing act only need to refer generally to the act it amends.[48]

Here, pre-existing § 187–53 regulated the minimum requirements for sanitary sewage facilities, including community wastewater systems. That regulation of sanitary sewage facilities entailed a comprehensive regulation of wastewater treatment options for Kent County subdivisions. The conditional use approval requirement, the mandate to consider a transition zone, and the regionalization requirement contained in the Bulk Utilities Ordinance all are germane to pre-existing § 187–53's comprehensive regulation of sanitary sewage facilities because those amendments also regulate the wastewater treatment options for Kent County subdivisions. Although that conclusion alone is enough to support my finding that Kent County complied with § 4110(i), I note that the regulation contained in the amendments are foreseeable outgrowths of regulation contained in pre-existing § 187–53. The conditional use approval requirement and the mandate to consider a transition zone directly address Kent County's control over the type of wastewater treatment systems allowed in

---

**46.** *See duPont v. Dir. of Div. of Revenue of Dep't of Fin.,* 347 A.2d 653, 655 (Del.1975) ("If the act in question is amendatory of existing law, the title is adequate if it refers to the subject matter and to the section of the law to be amended (provided that the body of the act is germane to that law)."); *see also* NORMAN J. SINGER, 1A SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 22:8 (6th ed. 2002) ("The constitutional requirement is complied with if the title of the amendatory act identifies the act or section to be amended and declares its purpose to amend, and the new matter added

by the amendatory act is germane to the subject of the original act or section.").

**47.** *Highfield,* 153 A. at 869.

**48.** *See, e.g., id.* ("It is doubtless true that it is permissible, under such constitutional provisions as the one before us, for the title of an amendatory act to express its subject by reference only to the subject-matter and section or chapter number of the act it proposes to amend.").

certain geographic areas, which was something that pre-existing § 187–53 regulated. The regionalization requirement mandates that community wastewater systems serve a larger base than just an individual subdivision. That requirement to have one wastewater treatment system serve a larger group of properties can be analogized to pre-existing § 187–53's requirement that larger subdivisions have community wastewater systems rather than individual on-site septic unless those subdivisions complied with onerous low density requirements.

I have no doubt that individuals interested in sanitary sewage disposal were on notice that what was ultimately approved as the Bulk Utilities Ordinance was within the scope of items that the Ordinance might address. Notice requirements like those contained in § 4110 are designed to give citizens the initial information they need to decide whether to embark on a fuller exercise in informed citizenship. Here, the title told any citizen that the Bulk Utilities Ordinance was addressing definitions related to sanitary sewage disposal and amendments to § 187–53 Minimum Requirements, the part of the existing Code regulating the permitted types of and requirements for wastewater systems. Combined with the title, Kent County sent out a public notice that included the Ordinance's synopsis, which provided additional information about the proposed Ordinance.[49] With this information, any reasonable citizen interested in wastewater systems (and development, given the connection between the two) should have then: i) read the full bill; ii) compared it to preexisting § 187–53; iii) determined how it affects her interests; and iv) attended the public hearing on the proposed legislation or otherwise submitted public comment if concerned about the changes in the regulation of wastewater treatment systems it proposed. Indeed, that process of citizenship is exactly what many Kent County citizens embarked upon after reading the notice about the Bulk Utilities Ordinance. The Levy Court public hearing was attended by numerous citizens, including several of the plaintiffs. Those citizens voiced their concerns and were successful in having the Bulk Utilities Ordinance amended. In fact, the conditional use approval requirement and the mandate to consider a transition zone were amendments that were more favorable to the plaintiffs' interests than the portion of the original Ordinance they replaced, which placed an outright prohibition on community wastewater systems beyond a quarter-mile outside the Growth Zone.[50]

## B. Compliance With 9 Del. C. § 4911

As discussed above, Kent County's power to regulate land use is delegated from the General Assembly and therefore Kent County must comply with the conditions imposed on the exercise of that power.[51]

---

**49.** The synopsis published in the notice of public hearing indicated that the proposed Ordinance would regulate the permitted types of and requirements for wastewater systems. Moreover, that synopsis put the public on notice that the changes would affect "new residential development in Kent County"—a phrase that would certainly pique the interests of those concerned about development in Kent County. Record at 147.

**50.** As the plaintiffs' counsel acknowledged upon questioning at oral argument, if "the title sufficiently addressed the subject matter of the regulation or approval process for these systems on a whole [then] a lesser included amendment that dealt with the same subject would not offend the statute." Tr. at 35.

**51.** See also Farmers for Fairness v. Kent County, 2007 WL 1413247, at *5 (Del.Ch. May 1, 2007) ("[T]he County's good intentions cannot outweigh its responsibility to govern in a manner consistent with the requirements imposed upon it by Chapter 49 of Title 9; it must act within the scope of its grant of power and it cannot disregard the procedural

One of those conditions is 9 Del. C. § 4911. Section 4911 requires that changes to Kent County's Zoning Code receive additional consideration and public scrutiny beyond that given to all ordinances. Section 4911(a) requires that no changes to zoning regulation "shall be made or become effective until the same shall have been proposed by or be first submitted to the [Regional Planning] Commission." [52] The Regional Planning Commission must have a public hearing after providing proper notice of the proposed zoning change and then make a report to the Levy Court which must hold its own properly noticed hearing before the changes to the Zoning Code can be finally adopted.[53]

■■■ The plaintiffs contend that the portion of the Regionalization Amendment stating that community wastewater systems "shall be considered public utilities and public utility uses requiring Conditional Use approval in accordance with the provisions of Chapter 205 [Zoning] and Chapter 187 [Land Use]" (respectively, the "Conditional Use Approval Requirement" and the "Public Utility Classification") was adopted in violation of § 4911. This, the plaintiffs argue, effected a change to the Zoning Code because the definition of public utilities in the Zoning Code did not previously include community wastewater

systems.[54] Although other portions of the Bulk Utilities Ordinance were the subject of the Regional Planning Commission hearing on January 26, 2007, the Conditional Use Approval Requirement and Public Utility Classification had not yet been proposed and, therefore, were not considered at a Regional Planning Commission public hearing. Kent County does not deny that the Conditional Use Approval Requirement and Public Utility Classification were not considered by the Regional Planning Commission. Instead, it makes two rather odd arguments.

As to the Conditional Use Approval Requirement, Kent County argues that the Requirement was not really an amendment of the Zoning Code but an incorporation by reference of other pre-existing sections of the Kent County Zoning Code. Kent County's argument that the Conditional Use Approval Requirement does not amend the Zoning Code contradicts the plain language of the Bulk Utilities Ordinance, which expressly makes community wastewater systems subject to conditional use approval *under the Zoning Code.* Based on the information in Kent County's reply brief, whether community wastewater systems were subject to conditional use approval before the Bulk Utilities Ordinance was approved is at least questionable.[55] My conclusion that it was at least debatable whether community wastewater

---

safeguards that the General Assembly has imposed.").

**52.** 9 Del. C. § 4911(a).

**53.** 9 Del. C. § 4911(b)-(c).

**54.** *See* Kent Cty. C. § 205–6 ("PUBLIC UTILITY—An organization supplying water, electricity, transportation, etc., to the public, operated by a private corporation under government regulation or by the government directly.").

**55.** I am forced to rely on Kent County's reply brief because it did not explain how conditional use approval for wastewater treatment systems was already required by the Zoning

Code in its opening brief. See Kent County Op. Br. at 30. The essence of Kent County's argument is that for at least certain zoning districts, "septage processing and storage" requires conditional use approval under the Kent County Zoning Code. Kent County Rep. Br. at 19–20. Kent County admits that septage and sewage do not have exactly the same meaning and then suggests that I should assume the drafters meant sewage instead of septage. *Id.* at 21–22. The ultimate conclusion of Kent County's four-page analysis is that community wastewater systems were already subject to conditional use approval. *Id.* at 19–22. That may or may not be the case, but all that matters for the purposes of this opinion is that what was at least a questiona-

systems required conditional use approval before the approval of the Bulk Utilities Ordinance is supported by an uncontroverted affidavit from a respected Kent County attorney stating that he is "aware of no community wastewater systems in Kent County for which conditional use approval was required prior to the passage of the Bulk Utilities Ordinance." [56] Moreover, this conclusion is supported by the well-known principle that courts should be suspicious of statutory interpretations that suggest that the legislature enacted a meaningless provision. [57]

With respect to the public utility classification, [58] Kent County argues that the amendment was not really an amendment because a 2004 amendment to 26 *Del. C.* § 102, a portion of the Delaware Public Utilities Act of 1974, added "wastewater (which shall include sanitary sewer charge)" systems to the definition of a public utility, [59] and that state definition of a public utility preempts Kent County's definition of a public utility. The problem with Kent County's argument is that the state definition of a public utility for the purpose of its Public Utilities Act (legislation largely addressing the interests of consumers affected by providers of certain public services) is entirely unrelated to Kent County's definition of a public utility for the purpose of its Zoning Code (a county law addressing land use). [60] Therefore, there is no conflict between the two different uses resulting in a situation where the state definition would preempt the county definition. [61] Kent County's

ble went to being rock solid after the Bulk Utilities Ordinance was approved. That is, the Bulk Utilities Ordinance made an "amendment[ ], supplement[ ], change[ ] or modification[ ]" to the Zoning Code. 9 Del. C. § 4911(a). Kent County admits as much in its reply brief when it states that after the adoption of the Bulk Utilities Ordinance, "the requirement that such wastewater treatment facilities comply in all respects with the County Code provisions for public utilities became even more clear—if any doubt existed before." Kent County Rep. Br. at 24.

**56.** Pls. Rep. Br. Ex. A. Kent County argues that all this suggests is that it was not enforcing its Zoning Code. If that is true, then Kent County can, as threatened in its reply brief, enforce the Zoning Code according to its belief that the Zoning Code's pre-existing provisions required conditional use approval for community wastewater systems. Kent County Rep. Br. at 20.

**57.** *See, e.g., Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.,* 636 A.2d 892, 900 (Del. 1994) ("[W]ords in a statute should not be construed as surplusage. . . .").

**58.** In essence, the public utility classification also encapsulates the conditional use approval requirement because public utilities required conditional use approval under the pre-existing Zoning Code.

**59.** 26 Del. C. § 102(6).

**60.** For this reason, Kent County's argument that the definition of public utility must be the same based on the following quotation from *Public Water Supply Co. v. DiPasquale* fails: "We find it inconceivable that the General Assembly would define 'water utility' with identical language in Titles 7 and 26, yet contemplate that the meaning would change dependent upon whether DNREC or the PSC was regulating the water use." 735 A.2d 378, 385 (Del.1999). That case dealt with the use of a term by the *same* legislative body in two different statutes rather than the use of a term by two *different* legislative bodies in two unrelated pieces of legislation, and as such, is inapplicable in this case.

**61.** *See Cantinca v. Fontana,* 884 A.2d 468, 473 (Del.2005) ("In Delaware, the State and its political subdivisions are permitted to enact similar provisions and regulations, so long as the two regulations do not conflict."). If the Levy Court was certain that the state definition of public utility in the Public Utilities Act of 1974 preempted Kent County's definition of a public utility in its Zoning Code, then why was a separate change to the County Code required? A logical answer to that question might be that the Levy Court wanted to bring the County Code into accordance with the preempting state statute. Several

preemption argument lacks any logical force and does not affect my conclusion that Kent County changed its Zoning Code without following the procedures required by 9 *Del. C.* § 4911.

## C. *Severability*

■■■■ Because I have found that only a portion of the Ordinance violates § 4911 and the Ordinance contains a severability provision,[62] I will consider whether the remaining portions of the Ordinance can lawfully be severed.[63] "When an ordinance or statute faces constitutional or statutory challenges, a Court may preserve its valid portions if the offending language can lawfully be severed."[64] The general inquiry is "whether the statute will function in a manner consistent with the intent of [the enacting legislative body]."[65] The standard for severability has been articulated in the following two part test: i) "Is the unobjectionable part, standing alone, capable of enforcement?" and ii) "Did the legislature intend the [un]objectionable part to stand alone in case the other part should fall?"[66]

■■■■ In applying that two part test to this case, I first note that the severability provision of the Bulk Utilities Ordinance indicates that the Levy Court intended the unobjectionable portion of the Ordinance to stand alone. The question then becomes whether the unobjectionable portion of the Ordinance is capable of enforcement. The relevant portion of the Ordinance, with the Conditional Use Approval Requirement and the Public Utility Classification stricken, reads:

> Community sanitary sewer treatment and disposal systems must serve all properties of a public utility as defined under Delaware Code Title 26, which received a Certificate of Public Convenience and Necessity from the Public Service Commission, located in a community

factors weigh heavily against the inference that that was the Levy Court's motivation. If that was the Levy Court's rationale, then why not disclose that the change was made because the County was bound by the state definition? Moreover, why make change through the alteration of an entirely different chapter of the County Code as opposed to directly making the change to the definition of a public utility in the Zoning Code, especially when the state change to its definition of a public utility was made directly in the definitions section of the Public Utilities Act of 1974?

**62.** Record at 395. The Severability provision states:

> The provisions of this Ordinance are severable and if any of its provisions or any sentence, clause, or paragraph or the application thereof to any person or circumstance shall be held unconstitutional or violative of the Laws of the State of Delaware by any court of competent jurisdiction, the decision of such court shall not affect or impair any of the remaining provisions which can be given effect without the invalid provision or application.

*Id.*

**63.** The parties devoted significant portions of their briefs and the oral argument to making irrelevant adjectival assaults on the other party's views and motives regarding land use regulation in Kent County rather than the merits of this action. Although all of the arguments received short-shrift, the parties provided almost no argument on severability—the sole mention of severability, at least that I am aware of, was a block quote in Kent County's reply brief. Kent County Rep. Br. at 26.

**64.** *Newark Landlord Ass'n v. City of Newark,* 2003 WL 22724663, at *1 (Del.Ch. Nov. 17, 2003); *see also Farmers for Fairness v. Kent County,* 2007 WL 1651931, at *5 (Del.Ch. May 25, 2007) (quoting *Newark Landlord Assn* ).

**65.** *Newark Landlord Ass'n,* 2003 WL 22724663, at *1 (quoting *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 685, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987)).

**66.** *Id.* (citing *Langley v. Elsmere Assocs.,* 1994 WL 149256, at *1 (Del.Super.Feb. 23, 1994)).

sewer basin as delineated in the Kent County Comprehensive Plan. These systems must be sited on separate tax parcels established for the sole purpose of occupancy by utility structures and disposal systems. Community sanitary sewer treatment and disposal systems ~~shall be considered public utilities and public utility uses requiring Conditional Use approval in accordance with the provisions of Chapter 205 and Chapter 187 and~~ shall be considered "nonresidential use properties" and as such shall also be subject to the opaque buffer and landscape screening requirements of § 187–79 (Buffers) applicable to nonresidential uses that adjoin residential use properties.[67]

67. Record at 394.

The unobjectionable portion of the Bulk Utilities Ordinance appears to be capable of enforcement. Therefore, only the Conditional Use Approval Requirement and the Public Utility Classification are void and the remaining portion of the Bulk Utilities Ordinance is valid.

## VI. Conclusion

For the foregoing reasons, the plaintiffs' motion for summary judgment is granted in part and denied in part. Kent County's motion for summary judgment is granted in part and denied in part. The parties shall submit a conforming order within ten days.